**DISTILLERS DISTRIBUTING CORP. v. SHERWOOD DISTILLING CO.**

No. 6025.

United States Court of Appeals Fourth Circuit.

Argued Jan. 13, 1950.

Decided March 6, 1950.

Morris Rosenberg, Baltimore, Md., for appellant.

Wilson K. Barnes, Baltimore, Md. (William Hoffenberg and Anderson & Barnes, Baltimore, Md., on brief), for appellee.

Before PARKER Chief Judge, SOPER, Circuit Judge, and WARLICK, District Judge.

PARKER, Chief Judge.

This is an appeal by plaintiff from a judgment for defendant in an action for breach of warranty against excess "outage", or deficiency of content, made in connection with a sale of neutral grain spirits in barrels. Plaintiff, the buyer of the spirits, alleged that, in making the sale, the defendant's broker used language which, when construed in the light of the custom of the trade, amounted to a warranty against excess outage. The case was heard without a jury by the trial judge, who held that the language used did not amount to a warranty because not used when the sale was closed but in the prior negotiations. Without passing upon the meaning of the language relied upon as a warranty or determining the other questions in the case, he directed that the case be dismissed and entered judgment for defendant on the ground that the language relied upon as a warranty did not enter into and become a part of the contract of sale.

For a proper understanding of the case, it is necessary to bear in mind that, under the revenue laws of the United States, when distilled spirits are manufactured they may be placed in a warehouse without payment of the excise tax imposed on manufacture, if a bond be given that the tax will be paid when they are withdrawn. In such case, the tax follows the ownership of the spirits and must be paid by him who is the owner at the time of withdrawal. The spirits are gauged when placed under bond and also at the time of withdrawal;

and the tax of $9 per gallon must be paid, not only on the spirits in the containers at the time of withdrawal, but also on any deficiency then appearing in excess of the standard amount determined pursuant to regulation under what is known as the "Carlyle formula".

In this case it appears that the seller, the Sherwood Distilling Company, had something in excess of 1200 barrels of spirits in warehouse under bond which it desired to sell. In a telephone conversation on March 30, 1948, it authorized a broker to sell them, fixing a price of $1 per gallon and stating that they "were in very good cooperage and that the outage was very slight". In a letter to the broker the following day, describing the spirits and stating that samples were being sent, they were offered for sale subject to confirmation at $1 per gallon, and it was said that they were "in very good cooperage subject to being on hand". The broker, in a letter of April 2, 1948, offered them to plaintiff at the price of $1 per gallon, regauged at time of delivery, and stated, "I am also advised that the goods are in first class cooperage, and the loss through evaporation has been slight". A sample of the spirits accompanied the letter, and the offer was made "subject to confirmation". There was evidence to the effect that the language used with respect to cooperage meant, under the custom of the trade, that the outage would not exceed that permitted by the Carlyle formula.

Plaintiff did not accept the offer at the price contained in the letter, but continued negotiations looking to the purchase of the spirits, and on April 14 a sale and purchase thereof was agreed upon at a price of 85 cents per gallon. No formal written contract covering the sale was signed, but the broker sent telegrams to the seller and buyer, confirmed by letters, setting forth the price and approximate quantity of the spirits and some other details such as the proof and the dates of barreling, but containing no warranty as to cooperage, or against excess outage. The buyer testified, however, that he relied upon the statements with regard to these matters contained in the letter of the broker as well as upon sim-ilar statements made by the broker verbally over the telephone and that he would not have purchased the spirits otherwise. There is evidence, also, that upon the seller's learning that there was excess outage in one 165 barrel lot of the spirits sold, he requested the broker to communicate this fact to the buyer and secure a waiver with regard thereto as a condition of sale.

When the spirits were regauged it was found that the outage, apart from that as to which a waiver had been obtained, was far in excess of what was allowed under the Carlyle formula; and plaintiff, as the owner of the spirits, was required to pay a tax of more than $18,000 on account of this excess outage. This suit was instituted to recover the amount so paid as damages resulting from breach of warranty.

■ It is well settled in Maryland, as elsewhere, that a warranty need not be made in formal language, but that any statement of fact made by the seller with respect to the quality or condition of goods offered for sale, which is relied upon by the buyer in purchasing them, constitutes a warranty and will be enforced as such. 55 C.J. 679 and cases cited. The rule was well stated by the Court of Appeals of Maryland in Osgood v. Lewis, 2 Har. & G. 495, 518, 18 Am.Dec. 317, quoted with approval by the Supreme Court of the United States in Shippen v. Bowen, 122 U.S. 575, 581, 7 S.Ct. 1283, 1285, 30 L.Ed. 1172, as follows:

■■ " 'An affirmation of the quality or condition of the thing sold, (not uttered as matter of opinion or belief,) made by the seller at the time of sale, for the purpose of assuring the buyer of the truth of the facts affirmed, and inducing him to make the purchase, if so received and relied on by the purchaser, is an express warranty. And in case of oral contracts, on the existence of these necessary ingredients to such a warranty, it is the province of the jury to decide, upon considering all the circumstances attending the transaction.' "

See also White Automobile Co. v. Dorsey, 119 Md. 251, 258, 86 A. 617; Greer v. Whalen, 125 Md. 273, 93 A. 521; Rittenhouse-Winterson Auto Co. v. Kissner,

129 Md. 102, 98 A. 361. The rule thus stated has been incorporated in the Uniform Sales Act, which has been adopted in Maryland. It is thus stated in Flack's Annotated Code of Maryland, Art. 83, sec. 30, viz.: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon."

 And we think it equally clear that to constitute a warranty it is not necessary that an affirmation as to the quality or condition of goods offered for sale be repeated at the time that the sale is closed. It is sufficient if it was made, as here, in the negotiations leading up to the sale. Where a contract is not reduced to a formal instrument, in which prior negotiations are deemed merged, its terms must be determined by consideration of all that was said leading up to the agreement; and a description of goods sold, made by the seller and relied upon by the buyer, may not be ignored because made in connection with an offer which was not accepted but which was a part of the negotiations leading up to what was accepted. See A. L. I. Restatement of Contracts, sec. 228 and Comment a, also sec. 240, illustration 7. The question is discussed by Prof. Williston in his work on sales in sections 209 and 210 as follows: "There seems no reason to distinguish a case where the seller makes a statement in regard to goods at the time of the sale, a little while before that time, or a long time before, if the statement was originally made with reference to a possible sale, or was expressly or impliedly adopted as the basis for subsequent negotiations. Affirmation may induce the sale as fully when the buyer buys after considerable further negotiations, as when he buys immediately. The question has vexed the English courts during the last century, and it was held in two or three cases which are still cited that the affirmation must have been made at the time of the sale in order to constitute a warranty. It is believed, however, that these decisions are inconsistent with later English cases.

* * * The best American authorities agree with the views expressed in the preceding section, in not regarding it as essential that statements should be made at the time of the sale in order that they should be warranties. But decisions may be found, especially in jurisdictions which require an intent to warrant, to the effect that representation prior to a sale, though inducing it, did not amount to a warranty. These decisions, however, commend themselves neither on principle nor for practical reasons."

Directly in point is the decision of the Supreme Judicial Court of Massachusetts in Leavitt v. Fiberloid Co., 196 Mass. 440, 82 N.E. 682, 684, 15 L.R.A.,N.S., 855, 864, where the court, speaking through Judge Rugg, states the rule as follows: "It is not necessary that the giving of the warranty should be simultaneous with the sale. It is enough if it is made under such circumstances as to warrant the inference that it enters into the contract as finally made. Nor is the fact that the alleged warranty was oral, while the order for and bill of parcels of the fiberloid, which caused the damage, were in writing, enough to exclude the conversation under the rule that a written contract cannot be varied by parol evidence. *The letter and bill of parcels were not a formal contract of such dignity as necessarily to indicate that all previous negotiations were merged in them.*" (Italics supplied.)

To like effect see Hobart v. Young, 63 Vt. 363, 21 A. 612, 12 L.R.A. 693; Crossman v. Johnson, 63 Vt. 333, 22 A. 608, 13 L.R.A. 678 and note; Pacific Power & Light Co. v. White, 96 Wash. 18, 164 P. 602, Ann.Cas.1918B, 125; Percival v. Oldacre, 18 C.B. (N.S.) 398; Cowdy v. Thomas, 36 L.T. (N.S.) 22; De Lassalle v. Guilford, 2 K.B. 215; 46 Am.Jur. sec. 300, p. 484; 55 C.J. 686. And see also Greer v. Whalen, supra, and Rittenhouse-Winterson Auto Co. v. Kissner, supra.

 It makes no difference that the offer in connection with which the statement as to cooperage was made was subject to confirmation. This meant merely that the offer, which was made by a broker, was subject to the willingness of the seller to

proceed with the sale, not that the terms of the offer were to be ignored if not repeated at the time the contract was closed.

Defendant argues that, even though it be held that the statements as to cooperage should be treated as warranties, the language used is not susceptible of being construed as a warranty against excess outage. This, however, is a matter to be determined on the evidence. While "good cooperage" or "first class cooperage" might ordinarily have reference to the containers, if only the ordinary meaning of the words are considered, it is well settled that usage or custom may give ordinary words, for the purposes of the contract in which they are used, a meaning different from which they would ordinarily bear.

The rule is thus stated in A. L. I. Restatement of Contracts, section 246: "Operative usages have the effect of (a) defining the meaning of the words of the agreement or the meaning of other manifestations of intention, and (b) adding to the agreement or manifestations of intention provisions in accordance with the usage, and not inconsistent with the agreement or manifestations of intention."

The comment on clause (a) of the rule as stated is as follows: "a. The rule stated in the clause is not confined to unfamiliar words or to words often used ambiguously. Familiar words may have different meanings in different places. A usage may show that the meaning of a written contract is different from an apparently clear meaning which the writing would otherwise bear."

Illustration number 11 under clause (b) is as follows: "11. A contracts to sell and B to buy 100 barrels of mackerel. By an operative usage, sellers of mackerel, unless they expressly exclude that interpretation of their bargain, are regarded as warranting that the fish are not below a certain size. A warranty to that effect is part of the contract."

See also 25 C.J.S. Customs and Usages, § 24, pages 111-112; Williston on Contracts, vol. 2, sec. 608; Wigmore on Evidence, vol. 5, secs. 2463, 2464; Alabama Chemical Co. v. International Agricultural Corp., 5 Cir., 35 F.2d 907, 909-910;

Laurel Realty Co. v. Himelfarb, Md., 62 A.2d 263; Applestein v. Royal Realty Corp., 181 Md. 171, 28 A.2d 830, 831. As said by the Court of Appeals of Maryland in the case last cited, quoting from Appleman v. Fisher, 34 Md. 540: " 'The principle upon which usage or custom is applied to the interpretation of contracts, is very familiar, and of constant occurrence. It may be resorted to in the absence of express stipulations, or where the meaning of the parties is uncertain or doubtful upon the language used, *or where the usage of the trade or business to which the contract refers, or with reference to which it was made, may afford explanation and supply deficiencies in the instrument.' " (Italics supplied).

In Alabama Chemical Co. v. International Agricultural Corp., supra, Judge Bryan, speaking for the Court of Appeals of the Fifth Circuit, tersely states the rule and the reason therefor as follows: "On the principle that the intention of the parties to a contract should prevail, the language thereof is to be given effect according to its trade meaning, notwithstanding that in its ordinary meaning it is unambiguous. 2 Williston on Contracts, 1172; 5 Wigmore on Evidence, §§ 2463, 2464."

Defendant's contention that the broker was without authority to make the warranty is wholly lacking in substance. The fact is that the language used by the seller in describing the spirits to the broker and authorizing him to sell them was almost identical with the language used by the broker himself; and the fact that the seller so described the spirits to the broker is sufficient proof, nothing else appearing, that the broker was authorized to describe them in like manner in making the sale. There would have been no sense in the seller's making the statement to him otherwise, as he had no interest in the spirits except to sell them. Even if there were no evidence of express authority, the general rule is that an agent to sell has implied authority to bind his principal by statements with respect to the qualities of the subject matter which are not open to inspection and as to which the principal has reason to know the buyer will desire to be

informed. See A. L. I. Restatement of Agency, sec. 63(2); 2 Am.Jur. p. 106; note Ann.Cas.1913D, pp. 478-479; Haynor Mfg. Co. v. Davis, 147 N.C. 267, 61 S.E. 54, 17 L.R.A.,N.S., 193.

 Equally without merit are contentions that the warranty was negatived by language printed on the broker's stationery to the effect that he assumes no responsibility and makes no warranty unless in writing and by language in the warehouse receipts, not a part of the contract of sale but issued afterwards, exempting the seller as warehouseman from a number of risks including evaporation and leakage. The statement relied on as a warranty was in writing and, in addition, the printing on the stationery was manifestly a mere limitation of the liability assumed by the broker as broker. The language of the warehouse receipts was nothing more than a limitation upon the liability assumed by the seller as warehouseman after the sale and regauging had taken place. Neither had any possible bearing upon the warranty as to cooperage made in behalf of the seller in the negotiations leading up to the sale.

 Contention is made that the judgment should be affirmed on the ground that the conduct of plaintiff after discovery of the excess outage negatives the existence of the warranty. It is elementary, however, that even where the buyer has the right to rescind a contract of sale for breach of warranty, he has also an election to accept the goods and sue for damages for the breach without returning or offering to return the goods. Greer v. Whalen, supra, 125 Md. 273, 93 A. 521; White Automobile Co. v. Dorsey, supra, 119 Md. 251, 258, 86 A. 217; 46 Am.Jur. 847; Flack's Annotated Code of Maryland, art. 83, sec. 67. It is clear, therefore, that the acceptance of the spirits after the excess outage was known or could have been known does not negative the existence of the warranty.

For the reasons stated the judgment appealed from will be reversed and the cause will be remanded for further proceedings not inconsistent herewith.

Reversed and remanded.