Charmaine S. **EICKHORST**, et al., Plaintiffs,

v.

The **E.F. HUTTON GROUP, INC.** and **John P. Holmes**, Defendants.

Eileen **WINEGARD**, et al., Plaintiffs,

v.

The **E.F. HUTTON GROUP, INC.** and **John P. Holmes**, Defendants.

Nos. 88 Civ. 3002 (RJW), 88 Civ. 7473 (RJW).

United States District Court, S.D. New York.

Jan. 11, 1990.

Elizabeth M. Toll, Beigel & Sandler, Ltd., New York City, for plaintiffs.

Benito Romano, Willkie Farr & Gallagher, New York City, for defendant E.F. Hutton Group, Inc.

## MEMORANDUM DECISION

ROBERT J. WARD, District Judge.

Defendant, the E.F. Hutton Group, Inc. ("Hutton"), has moved to dismiss the amended complaints against it in the above-captioned cases pursuant to Rules 9(b) and 12(b)(6), Fed.R.Civ.P.[1] Plaintiffs in the *Eickhorst* action have moved to further amend the complaint to add an additional plaintiff. For the reasons that follow, the motion to dismiss the amended complaints is granted in part and denied in part, and the motion to amend the complaint in the *Eickhorst* action is granted.

## BACKGROUND

Plaintiffs consist of one hundred-eighty-one (181) investors in the *Eickhorst* action and seventeen (17) investors in the *Winegard* action, all of whom purchased interests in American Completion Program 1983–3 ("ACP–1983–3"), an oil and gas limited partnership, during the last quarter of 1983. Amended Complaints at ¶ 4.[2] Hutton acted as a sales agent for the limited partnership, and plaintiffs allegedly pur-

---

1. The amended complaint in the *Winegard* action is identical in substance to the amended complaint in the *Eickhorst* action, the plaintiffs involved being different. Plaintiffs in both actions are represented by the same counsel.

2. The Amended Complaints treat those plaintiffs who jointly purchased interests in ACP–1983–3 as one investor.

chased their interests in ACP–1983–3 "upon the specific recommendation and insistence" of Hutton. Amended Complaints at ¶ 4. Plaintiffs now claim that they were misled about the degree of risk involved with this investment by the Hutton account executives who sold them the interests and by the prospectus for the program. According to plaintiffs, the Hutton account executives and the prospectus falsely characterized the investment as low risk and failed adequately to disclose the extent of the risk involved and the true likelihood of plaintiffs ever realizing a profit on their investment. They contend that their interests in the limited partnership have become worthless, in part due to the worldwide decline in the price of oil which occurred after they invested in ACP–1983–3.

Plaintiffs argue that Hutton formulated a scheme to distribute high risk securities to its conservative customers. As part of that overall scheme, they maintain that Hutton management directed the marketing and sale of the ACP–1983–3 program as a low risk investment by supplying the account executives responsible for selling the partnership interests with material, including a sales memorandum called the "Blue Top," a brochure, and certain financial projections, which falsely portrayed ACP–1983–3 as a conservative investment. The misleading information was then passed along to plaintiffs through the recommendations of the account executives.

The original complaints in these actions named as defendants the American Completion and Development Corporation, ACP–1983–3 (collectively the "American Completion Defendants"), Howard W. Phillips ("Phillips"), John P. Holmes ("Holmes"), and Hutton. The complaints asserted claims against defendants under (1) Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5; (2) Section 17(a) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77q(a); (3) common law fraud; and (4) the Racketeer Influenced and Corrupt Organizations Act ("R.I.C.O."), 18 U.S.C. §§ 1962(a), (c) and (d).

This Court, in an Opinion filed on February 1, 1989, dismissed the claims under Section 17(a) of the 1933 Act, holding that Section 17(a) does not provide a private right of action.[3] The remaining claims were dismissed for failure to plead fraud with particularity as required by Rule 9(b). Plaintiffs were granted leave to replead their fraud-based claims against defendants within the parameters set by Rules 9(b) and 11, Fed.R.Civ.P. *Eickhorst I*, 706 F.Supp. at 1102.

Subsequently, plaintiffs settled their claims with the American Completion Defendants and with Phillips. On March 31, 1989, plaintiffs filed amended complaints naming as defendants only Hutton and Holmes. Prior to the instant motions, plaintiffs settled their claims against Holmes. The amended complaints allege two Section 10b claims against Hutton, the first based upon the sale of unsuitable securities, the second based upon prospectus fraud.[4] Plaintiffs also assert state law claims against Hutton based upon common law fraud and breach of fiduciary duty.

### DISCUSSION

Rule 9(b) provides that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally.

As the Court explained in *Eickhorst I*, in a motion to dismiss a complaint for failure to plead fraud with particularity as required by Rule 9(b), plaintiffs' allegations must be taken as true. *E.g., Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986). The court must read the complaint generously, and draw all inferences in favor of

---

**3.** The opinion, *Eickhorst v. American Completion and Development Corp.,* is reported at 706 F.Supp. 1087 (S.D.N.Y.1989) (hereinafter *"Eickhorst I"*).

**4.** The unsuitability claim was not alleged in the original complaint.

plaintiffs. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Furthermore, Rule 9(b) must be read in conjunction with Rule 8(a), Fed.R.Civ.P., which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). The serious nature of a charge of fraud, however, renders mere conclusory allegations that defendants acted fraudulently insufficient to satisfy Rule 9(b). *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972); *Center Savings & Loan Assoc. v. Prudential–Bache Securities, Inc.*, 679 F.Supp. 274, 276 (S.D.N.Y.1988).

Rule 9(b) is designed to provide a defendant with fair notice of a plaintiff's claim in order to enable the defendant to prepare a defense, to protect his or her reputation or goodwill from harm flowing from baseless allegations of fraud, and to reduce the number of strike suits. *Cosmas v. Hassett, supra*, 886 F.2d at 11; *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). In order to satisfy Rule 9(b) "a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett, supra*, 886 F.2d at 11. *See also Eickhorst I*, 706 F.Supp. at 1091.

■ While Rule 9(b) allows "condition of mind" to be averred generally, plaintiffs must at least present those circumstances that provide a minimal factual basis for the allegations of scienter. *E.g., Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987). In other words, plaintiffs must " 'specifically plead those events' which 'give rise to a strong inference' that defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.* at 962 (citing *Ross v. A.H. Robins, supra*, 607

F.2d at 558); *Cosmas v. Hassett, supra*, 886 F.2d at 12–13.

### A. The Unsuitability Claim

■ A claim for fraud under Section 10(b) is stated by alleging that (1) an investment was unsuited to plaintiffs' needs; (2) the broker knew or reasonably believed the investment was unsuitable; yet (3) the broker recommended the investment anyway. *See Clark v. John Lamula Investors, Inc.*, 583 F.2d 594, 600 (2d Cir.1978); *Bischoff v. G.K. Scott & Co., Inc.*, 687 F.Supp. 746, 752 (E.D.N.Y.1986); *Mauriber v. Shearson/American Express, Inc.*, 567 F.Supp. 1231, 1237 (S.D.N.Y.1983). The facts upon which an unsuitability claim is based, like those supporting other fraud claims, must be pleaded with adequate particularity to satisfy Rule 9(b). *Clark v. Kidder, Peabody & Co., Inc.*, 636 F.Supp. 195, 199 (S.D.N.Y.1986).

Each plaintiff has alleged that he or she informed an account executive at Hutton of his or her relevant investment objective, usually being either "income" or "capital appreciation and preservation," and that he or she was informed by the account executive that the risk involved with ACP–1983–3 was either low or nonexistent prior to purchasing the interest. Amended Complaints at ¶ 4.

■ Plaintiffs argue that they were all conservative investors whose investment objective was to avoid risk, and that ACP–1983–3 was a high risk investment unsuitable to their needs. The specific allegations in the Amended Complaints concerning plaintiffs' investment objectives are meager, but, reading the pleadings generously as the Court must on this motion, they do indicate the reasons why the securities are asserted to be unsuitable as well as the specific transactions involved. *See Bischoff v. G.K. Scott & Co., Inc., supra*, 687 F.Supp. at 753 (complaint must indicate which securities were involved and why they are unsuitable).[5]

In addition, plaintiffs have alleged that Hutton management knew that ACP–

---

**5.** Donald King and Walter and Margaret Bangert, plaintiffs in the *Eickhorst* action, do not allege that they communicated any investment

objectives to Hutton. *Eickhorst* Amended Complaint at ¶¶ 4.97, 4.117. No other facts are alleged from which the Court might infer that

1983–3 was not a low risk investment because: (1) the very nature of the investment subjected its profitability and liquidity to the whims of the world oil market, (2) the level of risk involved with the limited partnership was clear to anyone with a basic knowledge of oil and gas investments at the time Hutton recommended ACP–1983–3, and (3) Hutton was at least generally familiar with the level of these risks because it had investigated ACP–1983–3 prior to selling the interests and had participated in numerous other oil and gas partnerships. Amended Complaints at ¶ 28.[6] These allegations differ from the scienter allegations of the previous complaint in that they focus on the risks associated with the sale of ACP–1983–3 at the time plaintiffs purchased their interests, and do not just assert the failure to predict events which occurred after the purchase of the ACP–1983–3 interests. The Amended Complaints have alleged that Hutton affirmatively characterized the risk of investing in ACP–1983–3 as low or nonexistent, disregarding the known pitfalls associated with such an investment. The pleadings supply Hutton with notice of the claims asserted against it and the general factual basis upon which these claims are based. The unsuitability claims may prove not to be viable for any number of reasons, but such a determination cannot be made at this preliminary point in the litigation. Accordingly, the Court concludes that the unsuitability claims, are sufficient to meet the minimum standards for pleading required by Rule 9(b). *See Cosmas v. Hassett, supra*, 886 F.2d at 13.[7]

### B. *Prospectus Fraud*

■ The second securities fraud claim under Section 10(b) charges that the prospectus for ACP–1983–3 was false and misleading because it failed to disclose material facts showing that the limited partnership was a high risk investment. Hutton is alleged to have sold the limited partnership units using, among other things, the prospectus, and to be liable for the misleading omissions in the prospectus. While it may well be that, as Hutton claims, the prospectus adequately disclosed the risks associated with the investment, the pleadings adequately allege omissions to disclose certain risks involved with the investment that suffice to state a claim under Section 10(b), thereby precluding a dismissal at this time under Rule 9(b). *Cf. Cosmas v. Hassett, supra*, 886 F.2d at 13 (inappropriate, on Rule 9(b) motion, for district court to consider documents discussed in complaint which are not attached as exhibits to the complaint or incorporated by reference in the complaint).

### C. *Statute of Limitations*

Hutton next argues that even if the securities fraud claims are insufficient under Rule 9(b), a substantial majority of these claims are barred by the applicable statutes of limitations. Plaintiffs all purchased their interests in ACP–1983–3 in the last quarter of 1983. The complaint in the *Eickhorst* action was not filed until April 29, 1988; the complaint in *Winegard* was not filed until October 20, 1988. Hutton has outlined the applicable statutes of limitations for the various plaintiffs listed in the *Eickhorst* Amended Complaint, and maintains that the securities fraud claims of 168 of the 181 investors are clearly time-barred if the relevant state statutes of limitations are not tolled in some manner.[8]

---

Hutton knew of the investment objectives of these plaintiffs. Accordingly, these plaintiffs fail to state a claim against Hutton for the sale of unsuitable securities, and their claims must be dismissed.

6. Plaintiffs also allege, in essence, that Hutton was advised by the principals of American Completion Development Company that the investment was not for low risk investors. Amended Complaints at ¶ 28. Plaintiffs do not, however, indicate when this information was furnished to Hutton.

7. The claims for common law fraud similarly satisfy the requirements of Rule 9(b).

8. The *Eickhorst* action includes investors from thirty-two different states as well as two foreign countries. Hutton argues that only those plaintiffs who reside in New York, Michigan and Vermont have Section 10(b) claims which were timely filed. These investors are:

Plaintiffs do not dispute the applicable limitations periods set forth by Hutton, but argue that Hutton fraudulently concealed the underlying securities violations, thus tolling the statutes of limitations for all plaintiffs. Amended Complaints at ¶ 32.

■ Allegations of fraudulent concealment, like allegations of fraud, must satisfy the pleading requirements of Rule 9(b). *See Armstrong v. McAlpin,* 699 F.2d 79, 88 (2d Cir.1983); *Donahue v. Pendleton Woolen Mills, Inc.,* 633 F.Supp. 1423, 1442 (S.D.N.Y.1986). Plaintiffs' fraudulent concealment allegations fall far short of these requirements. Plaintiffs have failed to allege what Hutton said or did not say to conceal the alleged fraud, how and when Hutton made any false representations about the success of the program, to whom any such representations were made, and how and when Hutton participated with American Completion in concealing the fraud. The fraudulent concealment allegations provide none of the factual specificity required to toll the limitations period. In fact, plaintiffs' own allegations that the level of risk involved in ACP–1983–3 was readily evident to anyone with a basic knowledge of investments in the oil and gas field undercuts their premise that the conclusory allegations of fraudulent concealment should be sufficient to toll the statute of limitations. The insufficiency of these allegations, however, does not end the matter.

■ Statutes of limitations are typically invoked as an affirmative defense, but when the allegations of the complaint make clear that the claim is barred by the limitations period, the plaintiff has the burden of establishing a basis to toll the applicable statute. *See Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1041 n. 4 (10th Cir.1980); 5 C. Wright & A. Miller, *Federal Practice & Procedure,* §§ 1308, 1357 (1987). If a plaintiff fails to satisfy that burden, the case can be dismissed on a motion under Rule 12(b). *Beres v. Thomson McKinnon Sec., Inc.,* [1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,395, at 97,060, 1987 WL 16977 (S.D.N.Y.1987); *Wallace v. American Tel. & Tel. Co., Inc.,* 460 F.Supp. 755, 757 (E.D.N.Y.1978).

■ As this Court explained in *Eickhorst I,* there is no federal statute of limitations for actions under Rule 10b–5. Instead, the federal courts have borrowed the most closely analogous statute of limitations under the law of the forum state, including any state borrowing statute. *Klock v. Lehman Bros. Kuhn Loeb Inc.,* 584 F.Supp. 210, 214 (S.D.N.Y.1984). New York's borrowing statute provides, in substance, that a cause of action which accrues outside of New York is time-barred if the suit is untimely under either New York law or under the law of the state where the cause of action arose, whichever is shorter. *See New York Civil Practice Law and Rules* ("CPLR") § 202; *Appel v. Kidder, Peabody & Co., Inc.,* 628 F.Supp. 153, 155 (S.D.N.Y.1986); *Maiden v. Biehl,* 582 F.Supp. 1209, 1212 (S.D.N.Y.1984). Claims for securities fraud under Section 10(b) accrue in the state where the loss resulting from the misrepresentation was sustained, not necessarily where the misrepresentation occurred. *Anisfeld v. Cantor Fitzgerald & Co., Inc.,* 631 F.Supp. 1461, 1465 (S.D.N.Y.1986); *Klock v. Lehman Bros. Kuhn Loeb Inc., supra,* 584 F.Supp. at

Ann B. Kueffner; Donald K. and Geraldine M. Henne; Thomas C. Noetzel; Florence G. Tetreault; Howard D. and Mary K. Smith; Jacques M. Quen; Jay Wiener—Trustee; Ronald N. Platt and Judith B. Adler; Thomas and Mary Ann Russo; Leonard and Willie Fillyaw; Marvin L. and Alice Levine; and Ernest K and Sheila B. Friedli.

In addition, Hutton has stated that it does not challenge as untimely the claims by the investor from North Dakota, Beverly A. Schaack, since that state has not yet addressed the applicable limitations period for section 10(b) claims and the claim would be timely if the blue sky statute of limitations period was applied, although untimely if the common law fraud limitations period was applied.

Hutton has not challenged the timeliness of filing by any of the investors in the *Winegard* action, erroneously stating that they all reside in New York. Memorandum of Law, filed July 14, at 1, n. 1. Of the seventeen investors listed in the *Winegard* action, only Carl T. and Jacqueline Taylor and John S. Treacy are alleged to be citizens of New York. The other plaintiffs are citizens of Arizona, California, Alabama, Alaska, and Nebraska.

214. Therefore, the Court must ultimately look to the statutes of limitations of the states where the various plaintiffs reside to determine if the action was timely commenced with respect to each investor.

■■■■ While the law of the forum determines the length of the limitations period, federal law determines when that period begins to run. *Robertson v. Seidman & Seidman*, 609 F.2d 583, 587 (2d Cir. 1979); *Arneil v. Ramsey*, 550 F.2d 774, 780 (2d Cir.1977). For claims under Section 10(b), the statute of limitations begins to run from the time when the plaintiff should have discovered the general fraudulent scheme. *Robertson v. Seidman & Seidman, supra*, 609 F.2d at 587. The Amended Complaints do not provide enough factual basis for the Court to conclude when plaintiffs should have known of the fraud and therefore, when the various statutes of limitations began to run. *Cf. Armstrong v. McAlpin, supra*, 699 F.2d at 88 (district court could properly conclude that securities fraud claims were time-barred because facts indicated that with reasonable diligence the shareholders should have discovered the alleged fraud prior to limitations period). Because plaintiffs are under no obligation in pleading a Section 10(b) claim to allege when he or she should have discovered the fraud, the Court is not now in a position to dismiss these claims as untimely. *See Beres v. Thomson McKinnon Sec., Inc., supra*, Fed.Sec.L.Rep. (CCH) ¶ 93,395 at 97,068. Accordingly, the motion to dismiss the securities fraud claims as untimely must be denied.

### D. *Breach of Fiduciary Duty*

■■■ Plaintiffs also allege that Hutton had a fiduciary relationship with the investors and breached its fiduciary duty by recommending ACP–1983–3 as a low risk investment. In order to plead a cause of action for breach of fiduciary duty, plaintiffs must allege at least some of the factors from which the Court could con-clude that such a fiduciary relationship had been established. *Boley v. Pineloch Assoc., Ltd.*, 700 F.Supp. 673, 681 n. 11 (S.D. N.Y.1988); *Mechigian v. Art Capital Corp.*, 612 F.Supp. 1421, 1431 (S.D.N.Y. 1985). This they have failed to do.

Plaintiffs simply incorporate the allegations from the securities fraud claims and argue that the sale of unsuitable securities constituted a breach of Hutton's fiduciary duty to plaintiffs. There is no indication that any of plaintiffs had prior dealings with Hutton, nor are any facts alleged concerning the relationship plaintiffs had with Hutton and the account executive who recommended ACP–1983–3. No effort was made to provide any factual allegations from which the Court could infer that a fiduciary relationship might have existed between the investors and Hutton, despite the fact that all of this information was readily available to plaintiffs prior to filing the Amended Complaints.[9] Accordingly, plaintiffs fail to state a claim for breach of fiduciary duty and this claim must be dismissed. *See Penson v. Cowen & Co.*, [1988–1989 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 94,311 at 92,064, 1989 WL 2740 (S.D.N.Y.1989).

### E. *Amending the Eickhorst Amended Complaint*

■■■■ Plaintiffs in the *Eickhorst* action seek leave of the Court to further amend the Amended Complaint to add another plaintiff, Dr. Garimella V.S. Rayudu, a citizen of Illinois. Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Amendments are favored as a general matter, *see East River Savings Bank v. Sect. of Housing and Urban Development*, 702 F.Supp. 448, 459 (S.D.N.Y.1988), in order "to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Unless there is a good reason to deny a motion to

---

**9.** The only allegation concerning plaintiffs' contact with Hutton aside from the one-time purchase of ACP–1983–3 consists of the general assertion that plaintiffs relied upon Hutton's advertising and marketing campaign. Amended Complaints at ¶¶ 11, 13. No facts have been alleged to support this bald assertion and it, standing alone, is insufficient to sustain a claim for breach of fiduciary duty.

**1204**

amend, failure to grant it is an abuse of discretion. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1966); *Guinness Mahon Cayman Trust, Ltd. v. Windels, Marx, Davies & Ives,* 684 F.Supp. 375, 381 (S.D.N.Y.1988). Reasons sufficient to justify the denial of leave to amend include undue delay, bad faith, or undue prejudice to the opposing party. *See Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230. In addition, leave to amend will not be given when "the proposed change is clearly frivolous or advances a claim or defense that is clearly meritless." *Slavin v. Benson,* 493 F.Supp. 32, 33 (S.D. N.Y.1980). Hutton objected to the proposed amendment on the sole grounds that it would be frivolous because the entire action should be dismissed. As the fraud claims remain, the motion to amend the *Eickhorst* Amended Complaint is granted.

### CONCLUSION

The unsuitability claims under Section 10(b) asserted by investors Donald King and Walter and Margaret Bangert in the *Eickhorst* action are dismissed for failure to state a claim upon which relief can be granted. The motion to dismiss the Section 10(b) claims of the other plaintiffs in both actions is denied. The breach of fiduciary duty claims are dismissed in both actions for failure to state a claim. Plaintiffs' motion to further amend the *Eickhorst* amended complaint is granted. Plaintiffs are directed to serve and file the second amended complaint within ten (10) days from the date of this decision. The parties are directed to confer and submit a status letter to the Court by February 28, 1990, setting forth proposed dates for the completion of discovery and the filing of a pre-trial order.

It is so ordered.