Thomas P. KEENAN, M.D., Thomas P. Keenan, M.D., P.C., and Dominion Trust Company, in its capacity as Trustee of the Drs. Reuling & Keenan Profit Sharing Plan (*formerly* Thomas P. Keenan, M.D., P.C. Profit Sharing Plan), Plaintiffs,

v.

D.H. BLAIR & CO., INC., a New York Corporation, Defendant.

No. 90 Civ. 4500 (JMC).

United States District Court, S.D. New York.

Aug. 12, 1993.

---

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendant's motion to dismiss counts one, two, and five is denied. Fed.R.Civ.P. 12(b)(6). Defendant's motion to dismiss counts three and four is denied as to claims alleging failure to disclose the value of the stock. Defendant's motion to dismiss counts three and four is granted as to claims of unsuitability, failure to disclose the stock's high risk of loss, and misrepresentation that the stock posed a low risk of loss. Fed. R.Civ.P. 9(b). Plaintiffs' request for leave to amend the complaint as to these claims is granted. Fed.R.Civ.P. 15(a).

## BACKGROUND

Plaintiffs are Thomas P. Keenan, M.D., a resident of Virginia, and Thomas P. Keenan, M.D., P.C., and Dominion Trust Co., corporations organized under Virginia law. Dominion Trust Co. is the trustee of the "Drs. Reuling & Keenan Profit Sharing Plan," formerly the "Thomas P. Keenan, M.D., P.C. Profit Sharing Plan." Thomas P. Keenan,

M.D., was the sole participant in the profit sharing plans and Thomas P. Keenan, M.D., P.C., was the sponsoring employer in both plans. The plaintiffs filed an amended complaint[1] on May 30, 1991. The amended complaint sets forth causes of action based upon breach of contract, common law fraud, securities fraud, and breach of fiduciary duty. The alleged violations arise out of two stock transactions which occurred on July 8, 1987, and July 15, 1987. On July 8, 1987, pursuant to a telephone conversation with Howard Rubin, plaintiff Keenan instructed Dominion Trust Co. to purchase through defendant D.H. Blair 5000 shares of stock in Total Health Systems, Inc., at a cost of $88,125. On July 15, 1987, following another telephone conversation with Rubin, plaintiff Keenan, on behalf of the profit sharing plan, purchased an additional 1000 shares in Total Health Systems for $17,250. Plaintiffs allege that Howard Rubin, a registered broker-dealer and Vice–President of Investments, recommended the above stock as "suitable for a pension and profit sharing plan" and represented that there was "a low risk of loss of principal in connection with the stock." Plaintiffs contend that the stock was purchased in reliance upon Rubin's advice, and later sold on October 21, 1987 for $16,515, a total loss of $88,860 having been incurred.

Plaintiffs allege that defendant's warranty of the stock's suitability and its representation concerning its low risk of loss constitute a breach of contract (counts one and two). Plaintiffs include an additional count of breach of contract predicated upon defendant's failure to notify plaintiffs of any fall in the stock's price as was allegedly warranted and represented by Rubin (count six). Plaintiffs also allege that the warranties regarding the suitability and risk of loss of the stock were false and fraudulent, and made for the purpose of inducing plaintiffs' purchase (count three). In addition, plaintiffs contend that defendant D.H. Blair "knowingly and intentionally and with intent to deceive" failed to disclose pertinent facts in connection with the stock purchase. Such omissions are detailed in the complaint as the failure to disclose that (1) the market price of the stock

was "artificially inflated" due to Blair's manipulation; (2) the actual value of the stock was considerably less than the selling price; and (3) there was a "high degree of risk of loss of principal" involved. Amended Complaint, at ¶ 12 (i)–(iii). Plaintiffs also assert that the above warranties and omissions constitute securities fraud in contravention of Rule 10b–5 (count four). Plaintiffs' final claim is premised upon a breach of fiduciary duty (count five). Plaintiffs maintain that defendant D.H. Blair acted in a fiduciary capacity in its dealings with plaintiffs, and consequently, had a duty to disclose "all risks and other material matters known, or which should have been reasonably known ... regarding such stock." Amended Complaint, at ¶ 15.

Defendant now moves to dismiss the breach of contract counts and the breach of fiduciary duty count for failure to state a cause of action. Fed.R.Civ.P. 12(b)(6). Defendant also moves to dismiss the common law fraud count and the securities fraud count for failure to state fraud with particularity. Fed.R.Civ.P. 9(b).

## DISCUSSION

### I. RULE 9(b) MOTIONS

Plaintiffs' fraud claims are premised upon section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder and upon common law fraud principles. A section 10(b) claim consists of the following elements: (1) defendant's misrepresentation or omission of a material fact in connection with the purchase or sale of a security; (2) plaintiff's detrimental reliance upon the defendant's misrepresentation or omission; (3) scienter, defined as the intent to deceive, manipulative, or defraud; and (4) employment of the mails, an instrumentality or interstate commerce, or a national securities exchange in furtherance of the fraud. *Bischoff v. G.K. Scott & Co., Inc.*, 687 F.Supp. 746, 748 (E.D.N.Y.1986); *Savino v. E.F. Hutton & Co., Inc.*, 507 F.Supp. 1225, 1231 (S.D.N.Y.1981). In order to state the com-

---

1. Plaintiffs filed an amended complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure before the Court ruled on the defendant's motion to dismiss the original complaint.

mon law cause of action for fraud, the plaintiff must allege: (1) a false representation of a material fact; (2) scienter, or knowledge or belief in its falsity; (3) belief in its truth by the person to whom the statement is directed; (4) the intent to induce reliance; and (5) detrimental reliance by the person claiming to be defrauded. *Virgilio Flores, S.A. v. Jerome Radelman, Inc.,* 567 F.Supp. 577, 579 (E.D.N.Y.1982); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297 (2d ed. 1990).

Defendant moves to dismiss Counts three and four of the Amended Complaint for failure to state fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides:

Fraud, Mistake, Condition of Mind

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b).

In deciding a Rule 9(b) motion, the court "must assume the truth of the plaintiff's allegations." *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991). Rule 9(b) is to be construed in light of Rule 8, which requires "a short and plain statement of the claim." *Onesti v. Thomson McKinnon Sec., Inc.,* 619 F.Supp. 1262, 1265 (N.D.Ill.1985); *Todd v. Oppenheimer & Co., Inc.,* 78 F.R.D. 415, 419 (S.D.N.Y.1978). As the Second Circuit has noted, "[t]he requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives ... of Rule 8." *Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) (quoting 2A *Moore's Federal Practice* ¶ 9.03 (2d ed. 1992)).

An important objective of Rule 9(b) is to apprise the defendant of the transaction(s) involved with sufficient particularity so as to permit adequate responsive pleading. *Gotshall v. A.G. Edwards & Sons, Inc.,* 701 F.Supp. 675, 679 (N.D.Ill.1988). Other aims of Rule 9(b) are the deterrence of strike suits

and the preservation of reputation. *O'Brien,* 936 F.2d at 676.

The oft-recited standard for assessing particularity "requires specification of the time, place, and content" of an alleged false representation or omission. *Wayne Inv., Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13 (1st Cir.1984) (quoting *McGinty v. Beranger Volkswagen, Inc. et al.,* 633 F.2d 226, 228 (1st Cir.1980)); *see Savino,* 507 F.Supp. at 1232. The pleader "must detail the content of oral communications, the defendants who made said communications, the time they were made, and in what manner they were fraudulent." *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1036 (D.Minn.1981); *see Helfant .v. Louisiana & Southern Life Ins. Co.,* 82 F.R.D. 53, 57 (E.D.N.Y.1979). The court is to apply the time, place and content standard while mindful of the purposes the rule is designed to further. In addition, the complaint must set forth facts which "give rise to a strong inference of fraudulent intent." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990). Scienter need not be alleged with the more stringent particularity associated with the allegations of circumstances comprising the fraud. *Breard v. Sachnoff & Weaver, Ltd.,* 941 F.2d 142, 143 (2d Cir.1991). A strong inference of scienter may be established by alleging facts which reveal motive or, where motive is not perceptible, by pointing to circumstances which "indicate conscious behavior by the defendants." *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

### A. *Unsuitability and Representations Regarding Risk of Loss*

Plaintiffs assert fraud claims based upon alleged misrepresentations and omissions of Rubin regarding the stock's risk of loss of principal as well as its "unsuitability" for a pension and profit sharing plan.

In addition to alleging facts sufficient to satisfy the time, place, and content standard, the plaintiff asserting unsuitability must show (1) the investment was incompatible with the plaintiff's investment objectives;

and (2) the broker recommended the investment although (3) the broker knew or reasonably believed the investment was inappropriate. *Clark v. John Lamula Investors, Inc.*, 583 F.2d 594, 601 (2d Cir.1978); *Eickhorst v. E.F. Hutton Group, Inc.*, 763 F.Supp. 1196, 1200 (S.D.N.Y.1990); *Bischoff*, 687 F.Supp. at 752; *Leone v. Advest, Inc.*, 624 F.Supp. 297, 304 (S.D.N.Y.1985); *Mauriber v. Shearson/American Express, Inc.*, 567 F.Supp. 1231, 1237 (S.D.N.Y.1983). The plaintiff must demonstrate that the quality of the stock when it was purchased deviated from his or her investment goals. *Lefkowitz v. Smith Barney, Harris Upham & Co., Inc.*, 804 F.2d 154, 155 (1st Cir.1986); *Alton v. Prudential–Bache Sec., Inc.*, 753 F.Supp. 39, 43 (D.Mass.1990). A subsequent diminution in value reveals nothing about the quality of the stock when it was purchased and does not illuminate the reasons why the stock was unsuitable for investment objectives. *Alton*, 753 F.Supp. at 43. Conclusory allegations regarding inappropriate investments will not be countenanced. *Bischoff*, 687 F.Supp. at 753. The plaintiff must adequately describe his or her investment goals and "give some indication why they consider such securities to have been unsuitable." *Vetter v. Shearson Hayden Stone Inc.*, 481 F.Supp. 64, 66 (S.D.N.Y.1979); *see Alton*, 753 F.Supp. at 43 ("daughter's need for investment security" insufficient); *Bischoff*, 687 F.Supp. at 753 ("needed money for children's college expenses" inadequate).

■ Scienter allegations must "focus on risks associated with the sale at the time plaintiffs purchased their interests" and "not just assert the failure to predict events which occurred after the purchase of the interests." *Eickhorst*, 763 F.Supp. at 1200.

■ In addition, the plaintiff must show justifiable reliance on the misrepresentation or omission.[2] The requirement of justifiable reliance assures that there is a causal link between the misrepresentation or omission and the plaintiff's injury. It is well-established that the plaintiff may not properly rely upon risks that are so apparent that the plaintiff must have been apprised of them. As one court has noted, "[t]hat there are risks inherent in stock market investment is, in our opinion, information so basic that it need not be disclosed by the broker." *Bischoff*, 687 F.Supp. at 753.

Plaintiffs allege that Rubin warranted and represented that the stock in Total Health Systems was suitable for a pension and profit sharing plan, and further, that there was a "low risk of loss" in connection with the purchase. Plaintiffs also assert that Rubin failed to disclose that the stock posed a high degree of risk of loss of principal.

■ Plaintiffs' allegations regarding unsuitability are deficient in several respects. Plaintiffs fail to show why the stock was incompatible with their investment aims. Plaintiffs allege no facts which indicate why the stock was unsuitable at the time of purchase. Plaintiffs merely recite that the stock declined in value. Such conclusory allegations are not sufficient to state an unsuitability claim with particularity.

■ Plaintiffs also fail to allege scienter adequately. Plaintiffs' allegations do not focus on the risks involved at the time of purchase. In *Eickhorst*, the plaintiff properly alleged scienter in an unsuitability claim where the facts indicated that the defendant had conducted an investigation prior to the sale and had been engaged in numerous other oil and gas partnerships; at the time the investment was recommended the level of risk was apparent to anyone with a basic knowledge of oil and gas investments; and the nature of the investment was such that its profitability and liquidity depended on the vagaries of the world oil market. *Eickhorst*, 763 F.Supp. at 1201. In contrast, Keenan merely asserts that the defendant warranted and represented that the stock was suitable for a pension and profit sharing plan. The Court discerns no facts alleged which give rise to a "strong inference of fraudulent intent."

Plaintiffs' bare allegations regarding their investment purposes resemble the vague alle-

---

**2.** In the case of an omission, reliance is presumed from the materiality of the omission. *Affiliated Ute Citizens of Utah et al. v. United States et al.*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). The burden is then on the defendant(s) to show non-reliance.

88

gations rejected in *Bischoff* and *Alton, supra.* Plaintiffs have not described in adequate detail why they consider the securities unsuitable.

### B. *Representations and Omissions Regarding the Stock's Risk of Loss*

Plaintiffs' allegations concerning omissions and misrepresentations of the risk of loss fail for similar reasons. These allegations may be viewed as outgrowths of the unsuitability claim in that they are, in essence, the reasons why the stock was alleged to be unsuitable. However, evaluated independently, they too are deficient.

Plaintiffs allege no facts which give rise to an inference of scienter. Subsequent decline in value is no reflection on the risk associated with the investment when it was made. Plaintiffs allege no facts other than the later diminution in value. In addition, it is questionable whether plaintiffs can even justifiably rely on omissions regarding the risk of loss. *See Bischoff, supra.* Therefore, defendant's motion to dismiss the counts alleging unsuitability, failure to disclose the risk of loss, and misrepresentation regarding the stock's low risk of loss, is granted.

■ Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." The Supreme Court has determined that this mandate should be heeded and leave to amend should be freely granted "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., [or] futlity of the amendment...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Court perceives none of the above circumstances in the instant action. Accordingly, plaintiffs' request for leave to amend counts three and four is granted as to claims of unsuitability, failure to disclose the stock's high risk of loss, and misrepresentation that the stock posed a low risk of loss. Fed.R.Civ.P. 15(a).

### C. *Omissions Regarding the Value of the Stock*

■ Plaintiffs allege that defendant knowingly failed to disclose that the market price of the stock had been "artificially inflated" by Blair and that the actual value of the stock was "substantially less than the then selling price." Amended Complaint, at ¶ 12(i) and (ii).

Plaintiffs adequately allege time and place. The misrepresentations were alleged to have occurred on the 8th and 15th of July 1987 during the course of Dr. Keenan's conversation with Rubin. Though the allegation of content is somewhat inartful, the Court believes that the allegation is sufficiently particular to give defendant notice so that it may prepare adequate responsive pleading. Scienter is averred generally, as permitted by Rule 9(b). Accordingly, defendant's motion to dismiss is denied as to the counts premised upon omissions regarding the value of the stock.

## II. *RULE 12(b)(6) MOTIONS*

■ In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true all of plaintiff's factual allegations and must construe the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). All permissible inferences from those facts must also be drawn in plaintiff's favor. *See Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that no relief can be granted under any set of facts plaintiff could prove in support of his claim. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

### A. *Breach of Fiduciary Duty*

■ Plaintiffs allege that defendant Blair (1) was a registered broker-dealer who dispensed investment advice, (2) recommended the stock, (3) knew plaintiffs had no other

knowledge concerning Total Health Systems save that which was imparted to them by defendant, and (4) Blair possessed information regarding Total Health and knew plaintiffs would be relying on its representations. Defendant moves to dismiss the breach of fiduciary duty count for failure to state a claim.[3]

■ The precise contours of a fiduciary relationship are incapable of expression. *Penato v. George*, 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 904 (2d Dep't 1976). Such a relationship is rooted in the trust or confidence instilled by one person in the honesty or probity of another. *Id.* A breach of fiduciary duty occurs "when influence has been acquired and abused and when confidence has been reposed and retained." *Richardson Greenshields Sec., Inc. v. Mui-Hin Lau*, 693 F.Supp. 1445, 1456 (S.D.N.Y. 1988).

■ Securities dealers "owe a special duty of fair dealing to their clients." *Securities and Exchange Comm'n v. Hasho*, 784 F.Supp. 1059, 1107 (S.D.N.Y.1992). In *Hanly v. Securities and Exchange Comm'n*, 415 F.2d 589 (2d Cir.1969), the Second Circuit articulated the duties which inhere in this "special relationship." *Id.* at 596. By virtue of his position, a dealer "implicitly represents he has an adequate basis for the opinions he renders." *Id.* Thus, a securities dealer must have an adequate and reasonable basis in order to recommend a security, and must disclose facts of which he has knowledge or that are easily ascertainable. *Id.* at 597. In addition, a dealer implies that his conclusions are the result of a reasonable investigation. *Id.* If essential information about a security is not available to the dealer, he must disclose this and identify the risks associated with the absence of this information. *Id.* The investigation undertaken by the dealer will vary with the type of security involved. *Id.* These duties have been described as implicit warranties of the soundness of the stock,[4] in terms of value, earning capacity, and the like. *Kahn v. Securities and Exchange Comm'n*, 297 F.2d 112, 115 (2d Cir. 1961) (Clark, J., concurring). Failure to disclose information in contravention of the warranty is tantamount to an omission of a material fact. *Id.* Dealers are under a special duty due to their expertise, as well as their advisory activities. *Charles Hughes & Co., Inc. v. Securities and Exchange Comm'n*, 139 F.2d 434, 437 (2d Cir.1943), *cert. denied* 321 U.S. 786, 64 S.Ct. 781, 88 L.Ed. 1077 (1944).[5]

The Court notes that the confirmation slips attached to the pleadings indicate that Blair was acting as a principal, that is, as a dealer. *See* Amended Complaint, at Exs. 1 and 2. Plaintiffs' allegations, though not models of clarity, allude to certain misrepresentations which, if proved, implicate the above mentioned duties of dealers to recommend a stock only upon a full investigation and only if an adequate and reasonable basis exists for the recommendation. Construing the complaint in the light most favorable to the plaintiff, as we are obliged to do on a motion pursuant to Rule 12(b)(6), the Court cannot say that count five fails to state a claim. Accordingly, defendant's motion to dismiss is denied.

### B. *Breach of Warranty*

Plaintiffs allege Rubin warranted that the stock in Total Health Systems was appropriate for a pension and profit sharing plan and that there was a low risk of loss of principal. *See* Amended Complaint, at ¶¶ 1–9.

---

3. In its moving memorandum Blair referred to Count six (entitled "Breach of Contract" in Amended Complaint) as a claim for breach of fiduciary duty. In its reply papers defendant acknowledged that it was mistaken in so referring to count six and withdrew its objection. Thus, the Court does not reach the question whether count six states a claim. Defendant's Reply Memorandum, at 11 n. 3.

4. Apart from the duties which flow from the implicit warranty, those who sell over the counter securities are subject to a special duty and must not abuse the confidence and trust reposed in them. *See Hasho*, 784 F.Supp. at 1108.

5. The implicit warranty is discussed most often when SEC orders barring dealers from further association with other dealers or brokers are reviewed. In a civil action in which an investor seeks damages for losses sustained allegedly by reliance upon the dealer's representations "the implied warranty may not be as rigidly enforced." *Hanly*, 415 F.2d at 596.

 Affirmations made at the time of sale are warranties which are incorporated into the contract of sale. *Williston on Contracts* § 954 (3d ed. 1964). An express warranty arises when a seller directly affirms the quality or condition of the stock, provided that such affirmation tends to induce the buyer's purchase, and the buyer purchases relying upon it. *Shippen v. Bowen*, 122 U.S. 575, 581, 7 S.Ct. 1283, 1284, 30 L.Ed. 1172 (1887); *Distillers Distrib. Corp. v. Sherwood Distilling Co.*, 180 F.2d 800, 802 (4th Cir. 1950); *Williston, supra*, § 954. Warranties are to be distinguished from statements of opinion, conjecture, or puffery, which do not result in the imposition of liability. *Williston, supra*, § 954. The test for determining whether a given statement amounts to a warranty has been articulated frequently: "did the seller assume to assert a fact of which the buyer is ignorant, or did he merely express a judgment about a thing as to which they each may be expected to have an opinion." *Wedding v. Duncan*, 310 Ky. 374, 220 S.W.2d 564 (1949) (quoting *Mantle Lamp Co. v. Rucker*, 202 Ky. 777, 261 S.W. 263, 264 (1924)); *see Titus v. Poole*, 145 N.Y. 414, 426, 40 N.E. 228, 231 (1895); *General Supply & Equip. Co., Inc. v. Harry S. Phillips*, 490 S.W.2d 913, 917 (Tex.Ct.Civ.App.1972). An express warranty need not be in writing; nor are technical words such as "warrant" or "warranty" necessary to create one. *Compton v. M. O'Neil Co.*, 101 Ohio App. 378, 381, 139 N.E.2d 635, 637 (1955). If the facts or affirmation rely wholly or partly on parol, it is within the province of the trier of fact to determine whether a statement constitutes an opinion or a warranty. *Royal Business Machs. v. Lorraine Corp.*, 633 F.2d 34, 43 (7th Cir.1980); *Distillers Distrib. Corp.*, 180 F.2d at 802; *Titus*, 145 N.Y. at 426, 40 N.E. at 232; *General Supply & Equip.*, 490 S.W.2d at 917; *Compton*, 101 Ohio App. at 381–82, 139 N.E.2d at 638. If writings exist, but do not represent a complete expression of the parties' agreement, the parol evidence rule will not bar admission of the oral testimony. *Distillers Distrib. Corp.*, 180 F.2d at 803.

 Plaintiffs assert that warranties regarding the suitability of the stock and its low risk of loss were made during the course of Dr. Keenan's conversation with Rubin. Plaintiffs allege that they purchased stock as a result of the defendant's recommendation. Whether these alleged oral statements constitute a warranty, as opposed to an expression of opinion, is a question for the trier of fact. Therefore, defendant's motion to dismiss the breach of warranty count for failure to state a claim is denied.

*CONCLUSION*

Defendant's motion to dismiss Counts one, two, and five is denied. Fed.R.Civ.P. 12(b)(6). Defendant's motion to dismiss Counts three and four is denied as to claims alleging failure to disclose the value of the stock. Defendant's motion to dismiss Counts three and four is granted as to claims of unsuitability, failure to disclose the stock's high risk of loss, and misrepresentation that the stock posed a low risk of loss. Fed.R.Civ.P. 9(b). Plaintiffs' request for leave to amend the complaint as to these claims is granted. Fed.R.Civ.P. 15(a).

SO ORDERED.