BRS ASSOCIATES, L.P., Estate of Charles Buckley, Jr., Milton Dresner Trust, H, F Holdings XIII, Krieger & Hentel, Arthur J. Kremer, William Levine, John L. Loeb, Jr., David S. Mack, Samuel R. Patent, Robert C. Patent, Signa Associates, Irving and Martha Sonnenschein, Sonnenschein, Sherman & Deutsch Profit Sharing Trust, and Milton Weinick, Plaintiffs,

v.

Norman DANSKER, Gloria Dansker, Robert Dansker, Susan Dansker Bogaty, Joseph Bogaty, Fred Warshaw, and Royal Resources Corporation, Defendants.

No. 95 Civ. 3691(DAB).

United States District Court, S.D. New York.

March 7, 2000.

Molton & Meekins, New York City, Susan L. Meekins, Patrick W. Begos, of counsel, for plaintiffs.

Crisona & Schwartz, L.L.P., New York City, Richard A. Schwartz, Richard L. Crisona, of counsel, for defendants.

## OPINION

BATTS, District Judge.

Plaintiffs, in their individual capacities as limited partners and lenders of Coronet Capital Company, a New York limited partnership ("Coronet"), allege that the parties controlling Coronet defrauded them, in violation of: (1) section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b–5 promulgated thereunder (the "Securities Claim"); (2) the Racketeer Influenced and Corrupt Organizations ("RICO") law, 18 U.S.C. §§ 1962(a),

1962(c), and 1962(d) (the "RICO Claims"); and (3) state law on the basis of breach of fiduciary duty, common-law fraud and fraudulent conveyance claims. Defendants move to dismiss the claims for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, failure to plead fraud with particularity, and failure to prosecute, pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure, respectively. For the reasons stated below, the Defendants' motions to dismiss the Securities, RICO, and common-law fraud claims are partially GRANTED and the motions to dismiss the breach of fiduciary duty and fraudulent conveyance claims are GRANTED in their entirety.

## I. BACKGROUND

Coronet was formed in 1985 for the purpose of making loans secured by mortgages on real property, condominiums, cooperative shares, related personal property and interests therein (these loans are collectively referred to as "Mortgage Loans"). Between 1985 and 1991, Coronet made Mortgage Loans and solicited and accepted equity investment from its limited partners and debt from its limited partners and various commercial banks. On February 26, 1991, an order for relief under Chapter 11 of the Bankruptcy Code was entered against Coronet, which was subsequently converted to a Chapter 7 liquidation. Pursuant to Coronet's limited partnership agreement and certificate, Coronet's existence terminated on December 31, 1995. (Am.Compl. ¶ 21.)

### A. The Parties

#### 1. The Plaintiffs

Plaintiff BRS Associates, L.P. ("BRS") purchased limited partnership interests in Coronet ("Partnership Interests") totaling $3,200,000 as follows: $2,000,000 on or about June 16, 1986; $500,000 on or about May 12, 1988; $200,000 on or about May 23, 1988; and $500,000 on or about July 25, 1988. (Am. Compl. at ¶ 3.) BRS also made a loan to Coronet ("Limited Partner Loan") of $115,000 on or about February 16, 1990. (*Id.*)

Plaintiff Estate of Charles P. Buckley, Jr. (successor in interest to Charles P. Buckley, Jr., deceased) ("Buckley") purchased Partnership Interests totaling $2,350,000 as follows: $1,300,000 on or about December 20, 1985; $100,000 on or about January 26, 1987; $100,000 on or about April 22, 1987; $150,000 on or about June 11, 1987; $100,000 on or about October 16, 1987; $200,000 on or about October 30, 1987; $50,000 on or about November 4, 1987; $100,000 or about February 10, 1988; $100,000 on or about February 18, 1988; $50,000 on or about March 10, 1988; $50,000 on or about June 17, 1988; and $50,000 on or about August 8, 1988. (*Id.* at ¶ 4.)

Plaintiff Milton Dresner Trust purchased Partnership Interests for $500,000 in 1986 and $250,000 on or about September 1, 1987. (*Id.* at ¶ 5.)

Plaintiff H,F Holdings XIII ("H,F Holdings") purchased a Partnership Interest for $1,000,000 on or about January 26, 1987. (*Id.* at ¶ 6.)

Plaintiff Arthur J. Kremer purchased Partnership Interests for $500,000 on or about December 9, 1985 and $100,000 in 1986. (*Id.* at ¶ 7.)

Plaintiff Krieger & Hentel purchased a Partnership Interest for $250,000 in or about 1989. (*Id.* at ¶ 8.)

Plaintiff Levine, Lindley Associates purchased a Partnership Interest for $250,000 in or about 1989. (*Id.* at ¶ 9.)

Plaintiff John L. Loeb, Jr. purchased Partnership Interests for $250,000 on or about December 10, 1987. (*Id.* at ¶ 10.)

Plaintiff David S. Mack purchased Partnership Interests totaling $2,000,000 as follows: $1,000,000 on or about July 10, 1986, $250,000 on or about July 29, 1987 and $750,000 on or about August 1, 1987. (*Id.* at ¶ 11.) He also purchased participations in one or more of Coronet's notes and/or

mortgages receivable ("Participations") for $950,000 on or about June 22, 1989. (*Id.*)

Plaintiff Samuel R. Patent purchased Partnership Interests totaling $1,250,000 as follows: $750,000 in or about 1986 and $500,000 in or about 1989, made Limited Partner Loans in the amount of $1,000,000 in or about November 1989 and $1,000,000 on or about January 8, 1990, and purchased Participations totaling $5,556,000 in 1990. (*Id.* at ¶ 12.)

Plaintiff Robert C. Patent purchased a Partnership Interest for $250,000 in 1986, and made a Limited Partner Loan in the amount of $500,000 on or about January 8, 1990. (*Id.* at ¶ 13.)

Plaintiff Signa Associates purchased Partnership Interests for $350,000 on or about January 26, 1987. (*Id.* at ¶ 14.) At all relevant times, Signa Associates' principal place of business was located in Massachusetts. (*Id.*)

Plaintiffs Irving and Martha Sonnenshein ("Sonnenschein") purchased Partnership Interests for $200,000 on or about December 30, 1988 and $100,000 in or about 1989 or 1990. (*Id.* at ¶ 15.)

Plaintiff Sonnenschein, Sherman & Deutsch Profit–Sharing Trust, successor to Irving Sonnenschein P.C. Defined Benefit Pension Trust ("SSD Trust") purchased Partnership Interests totaling $600,000 on or about April 1, 1986 and $200,000 on or about October 31, 1988. (*Id.* at ¶ 16.)

Plaintiff Milton Weinick purchased a Partnership Interest for $250,000 in 1989. (*Id.* at ¶ 17.)

### 2. The Defendants

Defendant Norman Dansker was a general partner of Coronet and president, chairman of the board, and (for some portion of the relevant time period) sole shareholder of Royal Resources. (*Id.* at ¶ 23.)

Defendant Gloria Dansker was executive vice president, secretary, director, and (for some portion of the relevant time period) sole shareholder of Royal Resources. (*Id.* at ¶ 24.)

Defendant Robert Dansker was vice president, assistant secretary and directory of Royal Resources. (*Id.* at ¶ 25.)

Defendant Susan Dansker Bogaty was vice president, assistant secretary and director of Royal Resources. (*Id.* at ¶ 26.)

Defendant Joseph Bogaty was an employee of Coronet. (*Id.* at ¶ 27.)

Defendant Fred Warshaw was vice president, assistant secretary and treasurer of Royal Resources and a limited partner in Coronet. (*Id.* at ¶ 28.)

Defendant Royal Resources Corporation ("Royal Resources") is a New York Corporation and a general partner of Coronet. (*Id.* at ¶¶ 19, 22.)

### B. Factual History

Coronet made Mortgage Loans to sponsors of cooperative and condominium conversions and purchased, at a discount, from those sponsors, portfolios of notes receivable from individual purchasers of cooperative or condominium apartments. (*Id.* at ¶ 37.) The market for cooperative and condominium apartments and luxury homes in the New York metropolitan area (where Coronet operates) was strong in 1985, 1986 and, to a lesser extent, 1987, a time period during which there were tax incentives for investors and owners of such real estate. (*Id.* at ¶¶ 37, 38.)

Plaintiffs allege that Coronet made numerous Mortgage Loans with no legitimate business purpose, in collusion with borrowers, thus allowing Coronet to report inflated asset values and fictitious income streams. (*Id.* at ¶ 39.) Plaintiffs cite a series of transactions, (*Id.* at ¶¶ 40–86), in which the Defendants (acting through Coronet and other affiliated entities) allegedly:

(1) extended the maturity dates of Mortgage Loans rather than allowing borrowers to default;

(2) loaned additional funds to borrowers which were used to pay interest on the original Mortgage Loans, as well as to pay

real estate taxes and other costs of maintaining the property so as to make it appear that the original Mortgage Loans were in good standing;

(3) used much of the proceeds from the sale of Partnership Interests, Limited Partner Loans and the sale of Participations to fund additional Mortgage Loans to defaulting borrowers;

(4) purchased from defaulting borrowers the properties securing Mortgage Loans at a price exceeding fair market value, so as to prevent disclosure of their actual values at foreclosure sales;

(5) continued to record high interest yields on Mortgage Loans after their date of maturity, although borrowers had made no payment and the collateral security was known to be nearly or wholly worthless; and

(6) misled, induced, or conspired with Coronet's auditors, Laventhal & Horwath, not to conduct detailed auditing procedures for many of the Mortgage Loans, particularly those for which Defendants claimed that borrowers were performing their obligations to pay principal and interest, and not to question the values reflected in transactions in which cash was exchanged for deeds. (*Id.* at ¶ 92.)

Plaintiffs allege that Defendants, to facilitate the use and prevent the disclosure of these fraudulent devices, did not deduct an allowance for losses from the stated amounts of its Mortgage Loans, thus creating inaccurate accounting records and reports nor did they deduct actual losses from Coronet's reported income, both of which were required under Coronet's limited partnership agreement. (*Id.* at ¶ 90.) Consequently, Defendants allegedly breached their duties to Plaintiffs by systematically generating false and misleading reports, thereby concealing Coronet's true financial condition and operating results and deceiving its creditors and investors. (*Id.* at ¶ 91.)

Plaintiffs allege that the following communications with Plaintiffs contained fraudulent statements or omissions:

(1) private placement memoranda dated October 1, 1985 and July 15, 1988 (the "1988 Memorandum"), and mailed to some or all of the Plaintiffs prior to their purchase of Partnership Interests, did not include the fraudulent devices noted above in a delineation of "Partnership Activities," (*id.* at ¶ 96);

(2) the 1988 Memorandum stated that the first objective of the partnership was "to preserve and protect the Partnership's capital" and that "[t]hrough December 31, 1987, the Partnership has experienced a favorable history of loan repayment," (*id.*);

(3) the 1988 Memorandum included audited financial statements for the years ended December 31, 1987 and 1986 with no liability for a loss reserve in either year and stated "[t]here was no allowance for Mortgage losses provided as of December 31, 1987 and 1986 based on management's review of Mortgages receivable[,]" and these financial statements were also mailed directly to one or more Plaintiffs on January 26, 1988, (*id.* at ¶¶ 96, 97);

(4) on or about February 14, 1989, Defendants mailed to one or more Plaintiffs audited financial statements which misrepresented the value of the Mortgage Loans and stated "[t]here was no allowance for Mortgage losses provided and no discontinuance of interest accrual on Mortgages as of December 31, 1988 and 1987 based on management's review of Mortgages receivable," (*id.* at ¶ 99);

(5) at about the time that each Plaintiff invested in Coronet, Norman Dansker represented to them that many of the principals of Coronet's borrowers had never defaulted on any transactions with him and were financially solid, (*id.* at ¶ 98);

(6) prior to the dates on which David Mack and Samuel Patent purchased Participations, Defendants represented to each of them that each of the underlying loans was secured by adequate collateral and was not in default, and that each of the borrowers was financially sound and able to repay the loan, (*id.* at ¶ 100);

(7) in December 1989 and January 1990, prior to the dates on which BRS, Samuel Patent, and Robert Patent made Limited Partner Loans, Norman Dansker and Warshaw represented, by telephone and in person, to each of those Plaintiffs that Coronet was in sound financial condition, that it had $35,000,000 in capital available, that it had no need for loss reserves and that all of its Mortgage Loans were current, (*id.* at ¶ 101);

(8) On or about February 5, 1990, Defendants mailed to Plaintiffs audited financial statements for the years ended December 31, 1989 and 1988 that falsely represented the value of Coronet's Mortgage Loans to be $60,845,212 and stated that "[b]ased on management's review of Mortgages receivable, as of December 31, 1989 and 1988, no allowance for losses was established for collection of Mortgage principal. Accrual of interest of $798,690 was discontinued on two Mortgages for the year ended December 31, 1989 based upon management's review," (*id.* at ¶ 102);

(9) On or about March 14, 1990, Defendants mailed to Plaintiffs Supplement No. 1 to the 1988 Memorandum, signed by Warshaw, which stated that "[t]hrough August 31, 1989, the Partnership has experienced a generally favorable history of loan repayment," (*id.* at ¶ 103);

(10) On or about July 25, 1990, Defendants mailed to Plaintiffs financial statements for six months ended June 30, 1990 and 1989 in which Warshaw, on behalf of Royal Resources, indicated that the value of the Mortgage Loans is $53,195,879, that an allowance for losses in the amount of $9,280,000 had been established as of June 30, 1990 and accrual of interest of $1,713,-866 and $375,227 was discontinued on ten and two Mortgages for the six months ending June 30, 1990 and 1989, respectively, (*id.* at ¶ 104); and

(11) At least annually, Coronet held a partnership meeting at which Norman Dansker, Warshaw and/or other Defendants allegedly made the fraudulent misrepresentations and omissions detailed above. (*Id.* at ¶ 105.)

Plaintiffs argue that Defendants' misrepresentations and omissions were made purposely and with the intent of securing pecuniary advantages for themselves. (*Id.* at ¶ 106.) Further, Defendants allegedly deliberately failed to take any action to stem Coronet's losses through a cessation of operations and liquidation, in accordance with the limited partnership agreement, that would have greatly reduced the losses that the Plaintiffs suffered through Defendants' fraud. (*Id.*)

## C. Procedural History

On November 6, 1990, seven creditors filed an involuntary bankruptcy petition against Coronet in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking an order for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). On February 25, 1991, Coronet consented to the entry of an order for relief under Chapter 11 of the Bankruptcy Code. On July 9, 1991, the Bankruptcy Court converted Coronet's Chapter 11 proceeding to a Chapter 7 liquidation for "cause." The Bankruptcy Court approved the election of a Chapter 7 Trustee for Coronet (the "Trustee"), who proceeded to conduct an investigation of the limited partnership with the aid of forensic accountants. Based upon the facts uncovered in the investigation, the Trustee commenced an adversary proceeding in bankruptcy court on November 2, 1992 (the "Bankruptcy Action") against Defendants Norman Dansker, Gloria Dansker, Royal Resources, Fred Warshaw, Susan Danker Bogaty, Robert Dansker, and the limited partners of Coronet, including the Plaintiffs in the instant action. The Trustee sought to recover: (1) pre-petition distributions from the general and limited partners of Coronet; (2) from Norman Dansker, Gloria Dansker, Royal Resources, and Fred Warshaw (collectively, the "Coronet Principals"), losses sustained by Coronet due to their waste and mismanagement, deliberate concealment

of Debtor's true financial condition, and deliberate inaction to stem losses; and (3) all direct and indirect compensation paid to the Coronet Principals during the years 1989 and 1990. (R.A. Schwartz May 9, 1996 Aff., Exh. E at ¶ 1.) The Trustee filed an amended complaint on August 25, 1993 alleging four additional claims concerning a fraudulent conveyance between Royal Resources and Gloria Dansker. (*Id.*, Exh. H, ¶¶ 141–156.)

On February 4, 1993, all of the Plaintiffs in the instant action, aside from Samuel Patent, Robert Patent, and Levine, Lindley Associates, filed an answer to the Bankruptcy Action and asserted cross-claims against the Coronet Principals. (*Id.*, Exh. C.) On February 25, 1993, the Plaintiffs in the instant action, with the exception of Levine, Lindley Associates, filed an amended answer and asserted cross-claims, virtually identical to those asserted on February 4, 1993 (the "Cross-Claims"), against the Coronet Principals. (*Id.*, Exh. D.)

On May 18, 1993 and April 7, 1994, the Bankruptcy Court approved stipulations of settlement between the Trustee and the Plaintiffs in this action, which preserved the Cross–Claims. (*Id.*, Exh. G at ¶ 6.) On or about November 1, 1994, the Trustee settled the claims he had asserted against the Coronet Principals and affiliated parties in exchange for a cash payment by Norman and Gloria Dansker of $2,650,-000. On or about January 17, 1995, the Coronet Principals moved to dismiss the Cross–Claims, arguing that the bankruptcy court did not have jurisdiction over claims based exclusively in state law. The Bankruptcy Court denied the motion to dismiss and remanded the case to federal district court. (R.A. Schwartz Sept. 27, 1996 Aff., Exh. F.) On February 21, 1996, Plaintiffs filed an Amended Complaint asserting cross-claims (though no longer styled as such) against the Coronet Principals, as well as Robert Dansker, Susan Dansker Bogaty, and Joseph Bogaty. Defendants move to dismiss these claims.

## II. DISCUSSION

■ Defendants move to dismiss the Amended Complaint and Cross–Claims, pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, failure to plead fraud with particularity, and failure to prosecute, respectively. In deciding a Rule 12(b)(1) motion, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). Defects in subject matter jurisdiction cannot be waived and may be raised at any time during a proceeding. *Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995); *Fox v. Board of Trustees of the State Univ.*, 42 F.3d 135, 140 (2d Cir.1994), *cert. denied*, 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995). Because "[t]his matter necessarily involves the examination of evidence underlying the jurisdictional elements of the pleadings," *Flight Services Group v. Omyaviation, Inc.*, 1993 WL 298887 at *1 (D.Conn.1993), the Court may consider materials outside the complaint, including documents from the Bankruptcy Action, without converting the motion to one for summary judgment pursuant to Rule 56. *See Id.*

■ In deciding a Rule 12(b)(6) motion, the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all inferences in favor of the pleader. *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). The Court should grant such a motion only if after viewing Plaintiff's allegations in this favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762; *see also, Cor-*

*tec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Because a 12(b)(6) motion is used to assess the legal feasibility of a complaint, the Court should not "assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (1984).

The Court notes that both parties have offered exhibits outside the pleadings. For the purposes of this Opinion, the Court excluded from consideration any documents that were not a part of the public record in the Bankruptcy Action, including affidavits from counsel for either party and private correspondence. Under Rule 201 of the Federal Rules of Evidence, a district court may "take judicial notice of documents filed in other courts ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings" and such documents may be used in the consideration of motions to dismiss under Rule 12. *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991); *see also Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir. 1996); *Cortec,* 949 F.2d at 48 (2d Cir.1991) (court may consider documents of which plaintiffs had notice and which were integral to claim). The Amended Complaint at paragraph 1 refers to the proceedings of the Bankruptcy Court and at paragraphs 40 to 86 paraphrases factual allegations from the Trustee's amended complaint in the Bankruptcy Action. Additionally, the Amended Complaint includes a set of claims at paragraphs 160 to 174 concerning an alleged fraudulent conveyance that is nearly identical to those claims in the Trustee's amended complaint. The Court takes judicial notice of Exhibits B—E and G—K to the Affidavit of Richard A. Schwartz dated May 9, 1996 and Exhibits A—D and F to the Affidavit of Richard A. Schwartz dated September 27, 1996 (the

"Exhibits"), all of which were filed with or issued by the Bankruptcy Court during the pendency of the Bankruptcy Action. There is no basis upon which to convert the motion under Rule 12(b)(6) to one under Rule 56, because the Exhibits are: (1) referred to in the Amended Complaint (or if not referenced, then paraphrased without citation), (2) official court documents that are part of the public record in the Bankruptcy Action, (3) signed by most of the same parties on both sides in the instant action, and (4) used to draw legal conclusions rather than to settle factual disputes. *See Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988) (holding that consideration of the proceedings and determinations of the district and appellate courts in earlier, related cases did not convert motion to one for summary judgment); *Perniciaro v. Natale,* 136 B.R. 344, 349 (Bankr.E.D.N.Y.1992) ("This principle surely does not preclude a court in deciding a Rule 12(b)(6) motion from considering exhibits incorporated in the complaint by reference and matters of public record such as orders or other items appearing in the record of a case." *Id.*). *But see Mantin v. Broadcast Music, Inc.,* 248 F.2d 530, 532 (9th Cir.1957) (reversing district court decision in which court did not convert a motion to one for summary judgment after it had considered affidavits and pleadings from another case); *In re Medical X–Ray Film Antitrust Litigation,* 946 F.Supp. 209, 214 (E.D.N.Y.1996) (converting motion to one for summary judgment after granting parties the right to conduct additional discovery including the taking of depositions of individuals whose testimony could not underlie the factual allegations contained in the complaint).

A fundamental task in this case is distinguishing between legal claims against the Defendants that are the property of the estate and those that are not. As discussed more extensively in section II.C., *infra,* certain claims against wrongdoers may only be pursued on behalf of the estate by the bankruptcy trustee, so that creditors benefit from the effect of bring-

ing property into the bankruptcy estate. *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989). Indeed, the Bankruptcy Court denied the motion of the Coronet Principals to dismiss the Cross–Claims and requested that they be remanded to the district court because it determined that "the remaining claims and causes of action will have no benefit to the estate." (R.A. Schwartz Sept. 27, 1996 Aff., Exh. F.) Thus, as a preliminary manner (and discussed in greater detail in the sections that follow), the Court holds that the following claims are the property of the estate and have already been asserted[1] and settled[2] in the Bankruptcy Action, and the corresponding sections of the Amended Complaint are hereby stricken: (1) the portion of the RICO Claims concerning general fraud, waste and mismanagement, rather than fraudulent inducement directed at individual Plaintiffs, delineated in the Amended Complaint in the second sentence of paragraph 141 and the first sentence of paragraph 148; (2) the entire breach of fiduciary duty claim, delineated in the Amended Complaint at paragraphs 121 to 127; (3) the portion of the common law fraud claim concerning the allegedly fraudulently induced inaction of the Plaintiffs, that prevented them from stemming losses due to general fraud, waste and mismanagement, delineated at paragraph 134 of the Amended Complaint; (4) the entire set of claims regarding the alleged fraudulent conveyance between Royal Resources and Gloria Dansker, delineated in the Amended Complaint at paragraphs 160 to 174.

Plaintiffs voluntarily dismissed their federal securities claim for damages pursuant to section 17(a) of the 1933 Act, 15 U.S.C. § 77q, (Pl. Mem. at 3 n. 1), and paragraphs 110 to 115 of the Amended Complaint are hereby stricken.

Because the federal claims against Defendants Robert Dansker, Susan Bogaty Dansker, and Joseph Bogaty do not fall within the applicable statute of limitations, the Court declines to exercise pendent jurisdiction over the three state claims against those Defendants.

### A. Federal Securities Claim Pursuant to 15 U.S.C. § 78j(b)

Plaintiffs allege that Defendants violated section 10(b) of the 1934 Act and SEC Rule 10b–5 promulgated thereunder. Defendants move to dismiss the Securities Claim because (1) it is time-barred by the applicable statute of limitations and does not relate back to the Cross–Claims and (2) Plaintiffs fail to state a claim for securities fraud with particularity, as defined by Fed.R.Civ.P. 9(b). Plaintiffs argue that (1) the Securities Claim is timely because it relates back to the Cross–Claims, which relate back to the Trustee's complaint in the Bankruptcy Action and (2) that the Securities Claim has been pled with sufficient particularity.

#### 1. Statute of Limitations

"Litigation instituted pursuant to § 10(b) and Rule 10b–5 … must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson et al.*, 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), superseded by statute, § 15 U.S.C. 78aa–1 (1998) (stating that the limitation period only applies to claims filed after June 19, 1991). The *Lampf* decision does not prohibit the addition of a § 10(b) claim by amendment to a timely-filed complaint, pursuant to Fed.R.Civ.P. 15(c), even though the amendment is proposed after

---

**1.** *See* R.A. Schwartz May 9, 1996 Aff., Exh. H at ¶¶ 133–156 (Trustee on behalf of the estate asserting claims for fraud, waste and mismanagement against various parties, including the Coronet Principals, under common law fraud, breach of fiduciary duty, and fraudulent conveyance causes of action).

**2.** *See* R.A. Schwartz May 9, 1996 Aff., Exh. I at ¶ 1 ("[T]he Settling Defendants shall pay and the Trustee shall accept the sum of $2,650,000 … in full settlement of all of the said claims and counterclaims in the Adversary Proceedings.")

June 19, 1991 and more than three years after the § 10(b) violation. *In re Ivan F. Boesky Securities Litigation,* 882 F.Supp. 1371, 1380–81 (S.D.N.Y.1995); *In Re Towers Financial Corporation Noteholders Litigation,* 936 F.Supp. 126, 129 n. 2 (S.D.N.Y.1996).

██ In the Cross–Claims, Plaintiffs allege that they were entitled to indemnification and a portion of the funds recovered by the Trustee because of their "claims against [the Coronet Principals] for fraud, fraudulent misrepresentation, waste and mismanagement, recision, restitution and breach of contract." (R.A. Schwartz Aff., Exh. C at ¶¶ 156,158.) Thus, the Securities Claim in the Amended Complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," Fed. R.Civ.P. 15(c)(2), and relates back to the Cross–Claims. The Court finds that Coronet had adequate notice of the claims against them in the instant action as a result of the Cross–Claims. *See Stevelman v. Alias Research Inc. et al.,* 174 F.3d 79, 86–87 (2d Cir.1999) ("Under the Fed. R.Civ.P. 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations 'by the general fact situation alleged in the original pleading.' " (citation omitted)). However, because the Cross–Claims were alleged only against the Coronet Principals, the Securities Claim relates back to the Cross–Claims only as against those Defendants, and is time-barred as against Robert Dansker, Susan Dansker Bogaty, or Joseph Bogaty. *See Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986) (defining test for the legitimacy of the relation back of claims against new parties under Fed.R.Civ.P. 15(c)).

Because Plaintiff Levine, Lindley Associates did not file any cross-claims in the Bankruptcy Action, its Securities Claim, first filed as part of the Amended Complaint on February 21, 1996, is time-barred under the *Lampf* rule. *See Morin v. Trupin,* 778 F.Supp. 711, 733–35 (S.D.N.Y. 1991).

██ "The statute of limitations in federal securities law cases starts to run on the date that the parties have committed themselves to complete the purchase or sale transaction." *Grondahl v. Merritt & Harris, Inc.,* 964 F.2d 1290, 1293–94 (2d Cir.1992). Here, the three-year period of repose started to run for each Plaintiff on the last date that they each purchased Partnership Interests.[3] In order to fall within the statute of limitations, Plaintiffs, other than Samuel Patent and Robert Patent, must have last purchased Partnership Interests after February 4, 1990 and Samuel Patent and Robert Patent must have last purchased Partnership Interests after February 25, 1990. As set out in section I.A.1., *supra,* Plaintiffs purchased Partnership Interests between December 9, 1985 and 1989 or 1990. Because the date of the purchase of their Partnership Interests predates the start of the applicable statute of imitations period, the Securities Claims of the following Plaintiffs are dismissed: BRS, Buckley, Milton Dresner Trust, H,F Holdings, Arthur J. Kremer, Krieger & Hentel, Levine, Lindley Associates, John L. Loeb, Jr., David S. Mack, Samuel Patent, Robert Patent, Signa Associates, SSD Trust, and Milton Weinick. Thus, the only Plaintiffs whose Securities Claim may sur-

---

**3.** Based upon the limited facts and argument offered by the parties on the question of whether the Participations are "securities" under section 2(1) of the 1933 Act, 15 U.S.C. § 77b(1), the Court concludes that the Participations are not covered by the 1933 Act. Pursuant to the second factor of a four-factor analysis delineated by the Supreme Court in *Reves v. Ernst & Young,* 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990), there appears to be no "broad plan of distribution, encompassing unsophisticated investors," *Pollack, et al. v. Laidlaw Holdings, Inc., et al.,* 27 F.3d 808, 813–14 (2d Cir.1994), with regard to the Participations. It appears that Participations were sold only to Limited Partners well-acquainted with Coronet and its business, as the limited partnership fell further into financial disarray in 1989 and 1990. (Am. Compl. at ¶¶ 11–12, 32.)

vive the motion to dismiss are Irving and Martha Sonnenschein, who may have purchased a Partnership Interest after February 4, 1990. These Plaintiffs may re-plead to establish such purchase, if the facts support it.

## 2. Particularity

■ When evaluating a claim of fraud, the Court must first look to whether the claim has been pled sufficiently under Fed.R.Civ.P. 9(b). Rule 9(b) serves several purposes—to put the defendant on notice of the details of the claims against him, to protect a defendant's reputation and goodwill from unfounded allegations and to prevent strike suits. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Maywalt v. Parker & Parsley Petroleum Co.*, 808 F.Supp. 1037, 1046 (S.D.N.Y.1992). Rule 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity...." Fed.R.Civ.P. 9(b). Therefore, "a complaint must adequately specify the statements it claims were false and misleading, give particulars as to the respect in which Plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 38 (S.D.N.Y.1992) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)), *aff'd*, 23 F.3d 398 (2d Cir.1994); *see also DiVittorio*, 822 F.2d at 1247; *Keenan v. D.H. Blair & Co., Inc.*, 838 F.Supp. 82, 86 (S.D.N.Y.1993); *Kubin v. Miller*, 801 F.Supp. 1101, 1117 (S.D.N.Y.1992).

■ "The elements of actual fraud under New York law are a false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage." *Congress Fin. Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 469 (S.D.N.Y.1992) (citing *Morse/Diesel, Inc. v. Fidelity And Deposit Co. of Md.*, 715 F.Supp. 578, 585 (S.D.N.Y.1989)). Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mis-

take shall be stated with particularity...." Additionally, "allegations [of fraud] must be supported by the pleadings of specific facts tending to show that, at the time the defendant made the asserted representations and promises, it never intended to honor its stated intentions." *Carlucci v. Owens–Corning Fiberglas Corp.*, 646 F.Supp. 1486, 1491 (E.D.N.Y.1986) (citing *Songbird Jet Ltd., Inc. v. Amax Inc.*, 581 F.Supp. 912, 924–25 (S.D.N.Y.1984)).

■ Although Rule 9(b) reads, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally," cases have held that if scienter is an element of the action it must be sufficiently pled. It is recognized that alleging "great specificity" is not required, *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987) (citing *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985)), as it cannot be expected that a plaintiff can plead a defendant's state of mind. *Id.* However, plaintiffs must plead circumstances which "give rise to a strong inference" that the defendants had knowledge of the fraudulent acts. *Id.; Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995); *Cosmas*, 886 F.2d at 12 (complaint must plead facts indicating conscious behavior by the defendant); *Ross*, 607 F.2d at 558; *Keenan*, 838 F.Supp. at 86 (same); *Schick v. Ernst & Young*, 141 F.R.D. 23, 26 (S.D.N.Y.1992) (same).

■ A strong inference of fraud is established either "a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Acito*, 47 F.3d at 52. Motive requires a showing of "concrete benefits that could be realized by one or more of the false statements ... alleged" and opportunity is shown by "the means and likely prospect of achieving the concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir.1994); *Pollack v. Laidlaw Holdings, Inc.*, No. 90 Civ. 5788, 1995

WL 261518, at *1–2 (S.D.N.Y. May 3, 1995). To allege conscious misbehavior or recklessness the complaint must link the misleading statement with facts that give rise to an inference that the speaker had a basis for knowing it was false. *Shields,* 25 F.3d at 1129; *Pollack,* 1995 WL 261518, at *1–2.

██ Reading the Complaint in the light most favorable to the remaining Plaintiffs, they have stated with particularity allegations of fraud pursuant to Fed. R.Civ.P. 9(b) as against the Coronet Principals,[4] the only Defendants against whom the Securities Claim is not time-barred. (Am. Compl. at ¶¶ 32–109). Accordingly, Defendants' motion regarding particularity is denied.

## B. Federal RICO Claims

Plaintiffs allege that Defendants violated RICO, 18 U.S.C. §§ 1962(a), 1962(c), and 1962(d). Defendants move to dismiss the RICO Claims because (1) Plaintiffs lack standing to assert the claims, (2) the RICO Claims are time-barred by the applicable statute of limitations, (3) the RICO Claims are not pled with sufficient particularity pursuant to Fed.R.Civ.P. 9(b), and (4) two of the RICO Claims fail to state claims for relief. Plaintiffs argue that (1) their claim is not derivative and they, therefore, have standing, (2) the RICO four-year statute of limitations began to run no earlier than November 6, 1990, (3) the RICO claims have been pled with sufficient particularity, and (4) that they have stated claims for relief.

### 1. Standing

██ "A shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock." *Manson v. Stacescu,* 11 F.3d 1127, 1131

(2d. Cir.1993), *cert. denied,* 513 U.S. 915, 115 S.Ct. 292, 130 L.Ed.2d 206 (1994). Courts have tried to lessen the number of double recovery situations, in which plaintiffs benefit from both derivative actions and their own private rights of action against the same or affiliated parties, and as a result of which shareholders divert the assets of a corporation from creditors. *See Id.* at 1132. However, the Second Circuit has also created a narrow exception to the direct injury test, allowing plaintiffs to proceed with RICO claims where defendants' misrepresentations induced plaintiffs to purchase over-valued securities from the defendants in a corporation. *Ceribelli v. Elghanayan,* 990 F.2d 62, 64 (2d Cir.1993); *see also Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1101 (2d Cir.1988) (allowing creditor to bring suit against officers of a debtor corporation due to injuries suffered directly by the creditor).

██ In the instant action, Plaintiffs allege that they suffered injury as a result of both fraudulently induced purchases of Partnership Interests and Participations and Limited Partner Loans, as well as an overall diminution in the value of Coronet. (Am. Compl. at ¶¶ 141, 148; RICO Statement at 8–9.) The Court finds that Plaintiffs have standing to assert RICO claims only with regard to Defendants' actions which led directly to fraudulently induced investments in and loans to Coronet. Thus, the portion of the RICO Claims contained in second sentence of paragraph 141 and the first sentence of paragraph 148 are dismissed.

### 2. Statute of Limitations

██ RICO claims are governed by a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Assoc.,*

---

4. The Court finds that as an officer, director, and sole shareholder of the general partner entity that is responsible for the production and distribution of private placement memoranda for a limited partnership, that Plaintiffs have pled with sufficient particularity as to Defendant Gloria Dansker's participation in a

pattern of fraud. *See DiVittorio,* 822 F.2d at 1247 (holding that reference to a private placement memorandum satisfies particularity requirements when defendants are insiders or affiliate participating in an offer of securities); (Am. Compl. at ¶ 96).

*Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). A cause of action accrues when a plaintiff discovers or should have discovered the RICO injury. *Bankers Trust,* 859 F.2d at 1102. The statute of limitations begins to run when plaintiffs are on actual or inquiry notice of the injury. *In Re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56, 60 (2d Cir.1998). "Inquiry notice is notice such that a 'reasonable investor of ordinary intelligence would have discovered the existence of the fraud.'" *Id.* (quoting *Dodds v. Cigna Securities, Inc.,* 12 F.3d 346, 350 (2d Cir.1993)).

▇▇▇▇ The first step in a RICO statute of limitations analysis is fixing the point(s) in time at which the injury occurred. It appears that in the instant action, the RICO injury occurred at the times at which Plaintiffs purchased Partnership Interests.[5] The second step is to determine when Plaintiffs should have been on inquiry notice of their RICO injury. Defendants argue that Plaintiffs were put on notice of their injury no later than November 6, 1990, when the bankruptcy petition was filed. (Def. Mem. at p. 20.) Plaintiffs contend that they could not have discovered the fraud underlying the RICO claims until November 2, 1992, when the Bankruptcy Action was initiated by the Trustee. (Pl. Mem. at 37–38.) District Courts in the Southern District, in applying the seemingly liberal RICO discovery rule set forth by the Second Circuit in *Bankers Trust,* have developed a stricter due diligence standard.[6] "In the securities context, district courts in the Second Circuit have ruled that a plaintiff is placed on inquiry notice by his or her actual or con-

structive knowledge of facts or circumstances indicating that an investment may have gone awry." *In Re Integrated Resources,* 850 F.Supp. at 1118. The Court finds that the Plaintiffs were on inquiry notice of the RICO violations as of November 6, 1990, when they learned that Coronet was in bankruptcy proceedings.

Plaintiffs contend that their RICO claims relate back to the Cross–Claims filed on February 4, 1993 and February 25, 1993, and, thus, are within the statute of limitations. (Pl. Mem. at p. 38.) In *Benfield v. Mocatta Metals Corporation,* 26 F.3d 19 (2d Cir.1994), the Second Circuit found that the plaintiff's allegations of acts of commodities wrongdoing, though not as extensive as allegations supporting a prospective RICO claim, "would require evidence of the same or similar wrongful acts and the testimony of the same or similar witnesses...." *Id.* at 23. In *Wells v. Harris,* 185 F.R.D. 128 (D.Conn.1999), the court found that a new RICO claim related back to a complaint "alleging an ongoing pattern of wrongful conduct" by defendants, *id.* at 131, though not including the specific elements of a RICO violation, provided adequate notice to defendants under Fed.R.Civ.P. 15(c). *Id.* at 133. *But see Sommer v. PMEC Associates,* 1993 WL 361660, at *4 (S.D.N.Y.1993) (holding that RICO claim does not relate back to complaint for accounting and constructive trust); *Burghart v. Landau,* 1991 WL 82064, at *8 (S.D.N.Y.1991) (holding that RICO claim does not relate back to common law breach of fiduciary duty allegation).

---

**5.** It is unclear whether a RICO injury occurred at the time of purchase of Participations and the making of Limited Partner Loans because there may be contractual or legal remedies which hold out a possibility that the debt, and therefore the injury, may be eliminated or significantly reduced. *See In re Merrill Lynch,* 154 F.3d at 59. In the case of Partnership Interests, Plaintiffs claim, as in *In re Merrill Lynch,* that Coronet was fraudulent at the outset because it could never achieve

the outcomes promised in the private placement memoranda. *Id.*

**6.** *In re Integrated Resources Real Estate Limited Partnerships Securities Litigation,* 850 F.Supp. 1105, 1117–18 (S.D.N.Y.1993). Judge Sweet concludes that a strict construction of the RICO statute of limitations is particularly important in the post-*Lampf* era, in which RICO claims are commonly substituted for stale section 10(b) securities fraud allegations. *Id.* at 1118 n. 11.

The Court finds in the instant action that the allegations of fraud in the Cross–Claims provided adequate notice to the Coronet Principals of the scope of allegations that is now alleged in Plaintiffs' RICO claims. · Thus, the RICO claims are time-barred only as against Robert Dansker, Susan Bogaty Dansker, and Joseph Bogaty. The RICO Claims of Plaintiff Levine, Lindley Associates are time-barred as against all Defendants because their claims do not relate back to any Cross–Claims. The claims of the remaining Plaintiffs are not time-barred against the Coronet Principals.

### 3. Particularity

Plaintiffs have stated with particularity allegations of fraud pursuant to Fed. R.Civ.P. 9(b) as against the Coronet Principals, the only Defendants against whom the RICO Claims are not time-barred. *See supra*, section II.A.2.

### 4. Failure to State Claims for Relief

 In order to state a claim upon which relief may be granted under section 1962(a), it must be shown that defendants used or invested racketeering income to acquire or maintain an interest in an alleged racketeering enterprise and that plaintiffs suffered injury as a result of such investment. *O & G Carriers, Inc. v. Smith*, 799 F.Supp. 1528, 1542 (holding that fraudulently induced limited partnership investments did not constitute an "investment injury" under RICO). Plaintiffs must, therefore, distinguish between predicate acts of racketeering that are actionable under section 1962(c), from injury due to defendants' investment of racketeering income actionable under section 1962(a), in order to sustain the latter claim. *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir.1990) (holding that lack of specific proof as to injury from investment of racketeering income results in dismissal of 1962(a) claim). In the instant action, the remaining Plaintiffs allege that they were (1) fraudulently induced to invest in an alleged enterprise because of predicate acts of racketeering, (Am. Compl. at

¶¶ 145–50), and (2) injured as a result of the investment of the racketeering income in an expanding enterprise. (Am. Compl. at ¶ 141.) While remaining Plaintiffs do not plead investment injury distinct from racketeering acts with great precision, the Court finds that they have adequately stated a claim for relief under section 1962(a) under the Rule 12(b)(6) standard.

The Court finds that remaining Plaintiffs have stated a claim of conspiracy upon which relief may be granted under 18 U.S.C. § 1962(d), as against the Coronet Principals, the only defendants against whom the RICO Claims are not time-barred. *See Update Traffic Sys. v. Gould*, 857 F.Supp. 274, 284 (E.D.N.Y.1994) (holding that plaintiffs met their burden under RICO and Fed.R.Civ.P. 8(a) by proving inference of an agreement between executives of an enterprise privy to the discrete and illegal purpose of a scheme).

### C. Breach of Fiduciary Duty Claim

Plaintiffs assert a common law claim for breach of fiduciary duty because of the alleged misrepresentations, omissions and conduct of Defendants Norman Dansker and Royal Resources. Defendants move to dismiss the claim because: (1) Plaintiffs lack standing to assert a claim that is solely the property of the bankruptcy estate, (2) the claim is time-barred under the applicable statute of limitations, and (3) Plaintiffs fail to state a claim for breach of fiduciary duty. Plaintiffs argue (1) that they have a direct cause of action against the Defendants, rather than a derivative one, (2) the claim relates back to the Cross–Claims and is, thus, not time-barred, and (3) that they properly state a claim for relief.

 State law determines which claims belong to the estate, and hence, can be asserted by the trustee. *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir.1995). If the cause of action belongs to the estate, the trustee has exclusive standing to assert it; conversely, if the cause of action belongs solely to share-

holders, the trustee has no standing to assert it. *In Re Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994). Where the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting the claim notwithstanding that outside of bankruptcy, they have the right to do so. *PepsiCo,* 884 F.2d at 701–02.

To determine standing, the Court must look to the nature of the wrongs alleged in the complaint without regard to the Plaintiffs' designation, *Labovitz v. Washington Times Corporation,* 172 F.3d 897, 901 (quoting *Lipton v. News Int'l, Plc,* 514 A.2d 1075, 1078 (Del.1986)) (distinguishing between direct and derivative claims under Delaware corporate law), and the nature of the injury for which relief is sought. *In re Educators Group Health Trust,* 25 F.3d at 1284. Where a corporation suffers an injury and the shareholders suffer solely through a diminution in the value of their stock, the claim belongs to the corporation. *Vincel v. White Motor Corp.,* 521 F.2d 1113, 1118 (2d Cir.1975). The shareholder may seek direct relief against a third party when the third party's wrong inflicts an injury on shareholders' rights rather than the corporation. *In re Granite Partners, L.P.,* 194 B.R. 318, 325 (Bankr.S.D.N.Y.1996). Analogous rules distinguish between direct and derivative actions in the limited partnership context. *Lenz v. Associated Inns & Restaurants Co.,* 833 F.Supp. 362, 380 n. 18 (S.D.N.Y.1993).

In the instant action, the Court must distinguish between claims that may be directly pursued by Plaintiffs and those that are reserved for the Trustee. In the *In re Granite Partners* decision, the bankruptcy court designated certain claims as rooted in "fraudulent inducement," while others were categorized as "waste, mismanagement, and breach of fiduciary claims." 194 B.R. at 326–27. The fraudulent inducement claims, including two federal securities claims, alleged misrepresentations which induced plaintiffs to invest in the limited partnership, while the misman-

agement claims alleged more general fraudulent conduct in the conduct of business. *Id.* at 327. Plaintiffs in the instant action allege breach of fiduciary duties by the general partners of Coronet, because of "the misrepresentations and omissions, and by engaging in the conduct, detailed above." (Am. Compl. at ¶ 123.) The Court finds that the Plaintiffs have no standing to assert the breach of fiduciary duty claim against the Coronet Principals because (1) the claim includes no specific reference to an inducement to purchase Partnership Interests or Participations or to make Limited Partner Loans and (2) Plaintiffs make a claim of common law fraud in which they specifically allege fraudulent inducement of investment in Coronet, (Am. Compl. at ¶ 133), thus preserving their direct claim. As Plaintiffs have no standing to assert breach of fiduciary duty, the claim at paragraphs 121 to 127 is dismissed.

### D. Common Law Fraud Claim

Plaintiffs assert a claim for common law fraud on the basis of allegedly deliberate misrepresentation and omission of material facts concerning Coronet's operations and financial condition. Defendants contend that part of this claim is time-barred by the applicable statute of limitations and that the claim has not been pled with sufficient particularity. Plaintiffs argue that the entire claim has been asserted within the statute of limitations and that the claim has been pled with sufficient particularity.

Under New York law, a claim for common law fraud must be brought "within six years from the time the cause of action accrued or within two years from the time the wrongdoing was, or with reasonable diligence should have been, discovered," whichever is longer. *Armstrong v. McAlpin,* 699 F.2d 79, 87 (2d Cir.1983). "The test as to when fraud should with reasonable diligence have been discovered is an objective one. '[W]here the circumstances are such as to suggest to a person

of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.'" *Id.* (quoting *Higgins v. Crouse,* 147 N.Y. 411, 416, 42 N.E. 6 (1895)).

■ Consistent with the finding in section II.B.2. of this Opinion, *supra,* the Court concludes that the Plaintiffs were on inquiry notice of the fraudulent scheme when Coronet filed for bankruptcy on November 2, 1990. Thus, under the two-year rule, the common law fraud claim, relating back to the Cross–Claims filed on February 4, 1993 and February 25, 1993 (for Samuel and Robert Patent), are time-barred.

■ Under the six-year rule, the statute of limitations begins to accrue on the date(s) that plaintiffs enter an agreement to invest or lend funds as a consequence of fraudulent inducement. *Lenz,* 833 F.Supp. at 370. Accordingly, any common law fraud claim stemming from the purchase of Partnership Interests or Participations or the making of Limited Partner Loans prior to February 4, 1987 (and February 25, 1987 for Samuel Patent and Robert Patent) is time-barred.[7] The common law fraud claim of Plaintiff Levine, Lindley Associates, who purchased a Partnership Interest in 1989, is time-barred because it does not relate back to the Cross–Claims

filed in 1993 and the six-year statute of limitations period ended sometime in 1995, before the Amended Complaint was filed on February 21, 1996. Thus the following Plaintiffs have a common law fraud claim within the statute of limitations, with the exception of such a claim as to those transactions specified in fn. 7, *supra:* BRS, Buckley, Milton Dresner Trust, John L. Loeb, David S. Mack, Samuel R. Patent, Robert C. Patent, Irving and Martha Sonnenschein, SSD Trust, and Milton Weinick.

For the reasons set forth in section II. A.2., *supra,* the Court finds that Plaintiffs have pled common law fraud with sufficient particularity under Fed.R.Civ.P. 9(b), as against the Coronet Principals.

### E. Fraudulent Conveyance Claims

■ Plaintiffs seek to set aside the return from Royal Resources to Gloria Dansker of a $2,000,000 demand promissory note (the "Fraudulent Conveyance Claims"). Defendants move to dismiss on the basis of standing, arguing that these claims are the property of the bankruptcy estate and thus to be pursued only by the Trustee and not as a direct action by the Plaintiffs. Plaintiffs contend that because the alleged fraudulent conveyance is by Royal Resources rather than Coronet, the claims are not a property of the bankruptcy estate and may be pursue directly by Plaintiffs.

---

7. The following Plaintiffs may not allege common law fraud for the specified transactions, which are outside of the applicable statute of limitations:

| | | |
|---|---|---|
| BRS | June 16, 1986 | $2,000,000 |
| Buckley | December 20, 1985 | $1,300,000 |
| | January 26, 1987 | $ 100,000 |
| M. Dresner Trust | 1986 | $ 500,000 |
| H, F Holdings XIII | January 26, 1987 | $1,000,000 |
| Arthur J. Kremer | December 9, 1985 | $ 500,000 |
| | 1986 | $ 100,000 |
| Levine, Lindley | 1989 | $ 250,000 |
| David S. Mack | July 10, 1986 | $1,000,000 |
| Samuel Patent | 1986 | $ 750,000 |
| Robert Patent | 1986 | $ 250,000 |
| Signa Associates | January 26, 1987 | $ 350,000 |
| SSD Trust | April 1, 1986 | $ 600,000 |

The question of whether a cause of action may be directly pursued by limited partners or is the property of the bankruptcy estate has been examined in section II.C., *supra*, and there is no need to repeat the legal propositions concerning standing in such situations. Plaintiffs seek to distinguish the Fraudulent Conveyance Claims by pointing out that they are alleged against Royal Resources, rather than Coronet. However, under the alter-ego doctrine, the bankruptcy trustee had standing to pursue such claims against Royal Resources, *see In re 10th Avenue Record Distributors, Inc.,* 97 B.R. 163, 165–66 (S.D.N.Y.1989), and such claims against a third party are the property of the bankruptcy estate. *See PepsiCo,* 884 F.2d at 701. Moreover, the Trustee actually pursued and settled claims identical to those of the Plaintiffs for the benefit of the entire estate. *See* R.A. Schwartz May 9, 1996 Aff., Exh. H, at ¶¶ 141–156; (*Id.,* Exh. I, at ¶ 4.) The Court finds that Plaintiffs do not have standing to pursue the Fraudulent Conveyance Claims.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are granted as follows:

(1) Defendants Robert Dansker, Susan Bogaty Dansker and Joseph Bogaty are DISMISSED from this action for all claims.

(2) Plaintiff Levine, Lindley Associates is DISMISSED from this action for all claims.

(3) The Securities Claim is DISMISSED. Plaintiffs Irving and Martha Sonnenschein are granted leave to replead with more specificity as to the date of their purchase of a Partnership Interest, but only as against the Coronet Principals.

(4) The RICO sections 1962(c) and 1962(d) claims are DISMISSED in part, against all Plaintiffs for general waste, fraud, and mismanagement.

(5) The breach of fiduciary duty claim is DISMISSED.

(6) The common law fraud claim is DISMISSED with regard to certain transactions specified in fn. 7, *supra.*

(7) The fraudulent conveyance claim is DISMISSED.

Remaining Plaintiffs may amend their complaint to re-plead as directed by the Court above, within 30 days of the date of this Opinion. Failure to amend within that time period shall constitute a waiver of the leave to amend. Remaining Defendants are to answer the amended complaint within 30 days of its service.

SO ORDERED.